IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

CHADRICK FULKS,                      )
                                     )
            Petitioner,              )
                                     )
vs.                                  )         No. 2:15-cv-00033-WTL-WGH
                                     )
L. LARIVA, Acting Warden,            )
                                     )
            Respondent.              )

**Supplemental Response to Order to Show Cause**

## I.     <u>**Background**</u>:

On or about January 29, 2015, Petitioner Chadrick Fulks ("Fulks") filed a

Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  Dkt. No. 1.  On

April 7, 2015, he filed a "Response to the Court's Entry Directing Further

Proceedings."  Dkt. No. 6.  The Government filed a "Return to Order to Show

Cause" on August 18, 2015, outlining the procedural background of Petitioner

Chadrick Fulks' ("Fulks") case and addressing the issue of whether Fulks' petition

should be dismissed pursuant to the "gatekeeping" provision of 28 U.S.C. §

2244(a), or whether, pursuant to the "savings clause" of 28 U.S.C. § 2255(e), the

Court could consider the merits of Fulks' claims.  On September 4, 2015, the Court

issued an Entry Directing Further Proceedings, directing the Government to

supplement its return by describing the specifications of ineffective assistance of

1

counsel previously raised by Fulks and decided on the merits, and the

specifications of ineffective assistance of counsel in Fulks' current § 2241 action

which were or could have been presented previously.

## II.   Specifications of Ineffective Assistance of Counsel Raised by Petitioner in Current § 2241 Motion:

1. Whether attorneys representing Fulks in his § 2255 proceedings were ineffective for failing to raise four issues that were subsequently raised in a petition pursuant to Federal Rule of Civil Procedure 59(e) by newly-appointed counsel from the Philadelphia Capital Habeas Unit ("PCHU")?

2. Whether § 2255 counsel were qualified to represent § 2255 petitioners in death penalty cases?

3. Whether attorneys from the PCHU, appointed to represent Fulks subsequent to the district court's denial of relief pursuant to 28 U.S.C. § 2255, labored under a conflict of interest that prejudiced their representation of Fulks? Petition for Writ of Habeas Corpus, p. 5.

## III.   Specifications of Ineffective Assistance of Counsel Previously Raised in Petitioner's § 2255 Motion and Decided on the Merits

Fulks raised 33 claims in his initial § 2255 motion.  Of these, the claims of

ineffective assistance of counsel were:

1. Trial counsel were ineffective for failing to present a meaningful mental health case in mitigation because they did not present certain expert witnesses who were prepared to educate the jury on Fulks' multiple impairments.

2.  Trial counsel were ineffective for failing to recognize that two particular witnesses could be called as rebuttal witnesses by the prosecution.

3.  Trial counsel were ineffective for failing to undertake an adequate and meaningful mitigation investigation painting an empathetic and accurate picture of Fulks' life.

2

4.  Trial counsel were ineffective for using law students in addition to professional investigators and mitigation specialists to prepare his case.

5.  Appellate counsel were ineffective for failing to appeal the jury charge on mitigation.

6.  Trial counsel were ineffective for failing to object to "the Government's imposition of a nexus requirement on the jury's mitigation finding" during its closing remarks.

7.  Counsel were ineffective for advising Fulks to give a statement to the FBI when he did not have a proffer letter or a plea agreement.

8.  Trial counsel were ineffective because they "failed to request that the statutory catch-all factor or the statutory minor participation factor be included on the verdict form."

9.  Trial counsel was ineffective for advising him to plead guilty to carjacking resulting in death.  (Claim 10)

10.  Trial counsel was ineffective for allowing Fulks to plead guilty, because the distinction between the intent required under Pinkerton and the gateway intent factors was too fine for a lay juror to appreciate.  (Claim 11)

11.  The Eighth Amendment precludes the application of Pinkerton in a capital case.

12.  Trial counsel were ineffective for failing to offer evidence of  co-defendant Brandon Basham's leadership and manipulation that would have firmly established Fulks' minor participation. (Claim 13)

13.  Trial counsel were ineffective for failing to present meaningful evidence that Fulks would not be dangerous in the future to prison inmates or Bureau of Prisons (BOP) personnel.  (Claim 14)

14.  Trial counsel "utterly failed at gathering useful information, educating the prospective jurors, or establishing a rapport." (Claim 15)

15.  Trial counsel were ineffective because they did not carefully review juror questionnaires. (Claim 16)

16.  Trial counsel were ineffective for "choosing to seat automatic death veniremen."  (Claim 17)

17.  Appellate counsel were ineffective because they did not appeal this Court's ruling that a statement by Sheriff Hewett regarding Basham's partial statement, "you know, I could never kill a deer and here I have . . . ."  was not admissible. (Claim 18)

18.  Trial counsel were ineffective for failing to uncover what Sheriff Hewett actually saw and what he would say under oath.  (Claim 19)

19.  Trial counsel were ineffective for failing to question witness Ronnie Fulks about a .45 caliber revolver.  (Claim 24)

20.  Trial counsel were ineffective because they allegedly failed to adequately prepare three lay mitigation witnesses for their testimony.  (Claim 26)

21.  Trial counsel were ineffective for failing to explain to the jury the concept on acceptance of responsibility.  (Claim 28)

22.  Trial counsel were ineffective for failing to object to the government's assertion of religion in the trial.  (Claim 29)

23.  Trial counsel were ineffective for failing to bring his artistic ability to the attention of the jury.  (Claim 30)

After a six-day evidentiary hearing, the district court addressed each claim in detail in a 175-page Order denying relief.  Fulks v. United States, CR No. 4:02-992-JFA, Dkt. No. 1326.

IV.  **Specifications of Ineffective Assistance of Counsel in Current MotionWhich Were or Could Have Been Presented Previously:**

Contrary to Fulks' claim that his habeas counsel failed to raise the following four issues in his initial § 2255 petition, and that he thus "has been deprived of any

opportunity to present these issues in his original collateral proceedings," Petition

for Writ of Habeas Corpus, Dkt. No. 1, p. 6, the issues raised in the current action

were addressed on the merits by the district court in South Carolina.  Fulks again

raises the following issues:

1. Trial attorney, John Blume, did not possess the degree of capital litigation experience that had been represented to the district court.

2. Trial counsel was ineffective by advising Fulks to enter into a proffer agreement and to plead guilty without receiving any concessions from the Government.

3. The district court erred in refusing to postpone the evidentiary hearing and allow further exploration of the (childhood) sexual abuse issue and expert testimony relating to the issue.

4. The Government failed to disclose information regarding special treatment and concessions to four witnesses who testified during the penalty phase of the trial.

These issues were raised in a motion pursuant to Fed.R.Civ.P. 59(e) by counsel

from the PCHU (Philadelphia Capital Habeas Unit), who were appointed by the

district court after Fulks' evidentiary hearing for his § 2255 petition.   Counsel

attached the affidavits of seventeen individuals to the motion.  On December 8,

2010, the district court held a hearing to address the issues.  In its Order on Motion

to Alter or Amend, filed on January 13, 2011, the district court found:

> Because . . . Fulks cannot show that the information set forth in the seventeen post-judgment affidavits submitted was not available to Fulks or his counsel earlier, the court will strike all these affidavits as untimely under Rule 59(e).  Moreover, it clearly appears that at least one of the four issues . . . (issue number 4) is untimely and unauthorized as a successive § 2255

claim under <u>Winestock</u>.  The court's decision to deny the motion rests upon these grounds.  Out of an abundance of caution, however, and in the event that the Court of Appeals wishes to address these late issues on their merits, **the court will issue an alternative ruling on the merits of the claims asserted** in the present motion.

Attach. A (Court's Order on Rule 59(e) motion, emphasis added).  As discussed below, the four issues Fulks alleges were not considered due to ineffectiveness or conflict of § 2255 counsel, have already been thoroughly briefed and argued by counsel, and considered and decided by the trial court.

> 1. <u>Alleged Misrepresentation by Trial Counsel Regarding Capital Litigation Experience</u>

The Government called Blume as a witness during the evidentiary hearing for Fulks' § 2255 petition.  Blume was questioned about his background in capital litigation not only by the Government, but also by Fulks' counsel and the district court.  In the subsequently-filed Rule 59(e) motion, Fulks' counsel submitted declarations by four attorneys, two of whom were lead attorneys in two state death penalty cases, which Blume referenced in his Curriculum Vitae. Attach. A at p. 14. In his order denying the motion, the judge pointed out that Blume "never testified that he was lead counsel, nor did he suggest that he played a key role in conducting voir dire or witness examination in those two state trials," and that in "appraising Blume's  effectiveness, the court did not place any special significance on the depth of Blume's involvement in these two particular state trials." <u>Id.</u>  The district court further observed:

> In addition to presiding over Blume's performance at trial, this court was given an extensive behind-the-scenes view of Blume's trial preparation at the § 2255 evidentiary hearing. . . . Blume appeared to be a master organizer, formulating work assignments, charts, checklists, and multi-person review of all aspects of the events leading up to Fulks's trial. Accordingly, this court has no hesitation whatsoever in concluding that Blume possessed the necessary requisites to perform quite capably as a courtroom lawyer during Fulks's penalty phase trial.

Id. The district court, in its Rule 59(e) order, incorporated its findings regarding Blume's trial performance from its August 20, 2010 order denying relief pursuant to Fulks' § 2255 petition. Thus, Fulks has already had two opportunities to have the qualifications and performance of his trial counsel reviewed.

   2.   Blume's Recommendation that Fulks Make a Proffer and Plead Guilty without any Concessions by the Government

This issue, too, has been raised and decided. In his § 2255 petition, Fulks alleged that his trial counsel were ineffective in advising him to give a statement to the FBI when he did not have a proffer letter or plea agreement. (Claim 7). Fulks also alleged that, for a number of reasons, trial counsel was ineffective in advising him to plead guilty. See Fulks v. United States, CR No. 4:02-992-JFA, Dkt. No. 1326, Order Denying Petition for Relief Under 28 U.S.C. § 2255, pp. 86-101. Extensive testimony was heard regarding this issue during the § 2255 evidentiary hearing.

Regarding Fulks' § 2255 claim that his trial counsel should not have allowed him to give a statement to the FBI, the Government submitted a declaration from

the lead AUSA prosecuting the case that the Government had no interest in granting any concessions to Fulks for his statement, because the Government already had overwhelming evidence of Fulks' guilt. Id. at 77-78. Fulks' trial counsel testified that he had concluded that Fulks' guilt was not subject to any reasonable dispute. Id. at 78. He stated that he had attempted to convince the Government to withdraw the death penalty notice in exchange for Fulks' guilty pleas to all charges, but that the Government was unwilling to dismiss its recommendation. Id. With this in mind, Fulks' counsel made the strategic decision to have Fulks make a statement to the FBI, because counsel believed it was the only way Fulks' version of the crime spree, under which he had a less culpable role than co-defendant Basham, would get into evidence without subjecting Fulks to cross-examination. Id. at 79. Trial counsel also felt that such a move would demonstrate Fulks' remorse and acceptance of responsibility. Id. It would allow Fulks to get his claim before the jury that co-defendant Basham, not Fulks, was the actual killer. Blume testified: "I thought our main chance to save Chad's life was to convince the jury that he wasn't the killer." Id. at 82. The court found this to be a reasonable trial strategy. Id. at 83.

Similarly, the court heard much testimony at the § 2255 evidentiary hearing regarding Fulks' claim that his trial counsel were ineffective for advising him to plead guilty. Testimony included an expert witness, Andrea Lyon, a clinical

8

professor of law and an experienced capital litigator, who testified that it would never be appropriate for a capital defendant to plead guilty when death can be a resulting penalty.  Id. at 100.  In its opinion, the district cited a recent Supreme Court decision recognizing that a guilty plea "may be tactically advantageous for the defendant."  Id. (citing Florida v. Nixon, 543 U.S. 175 (2004)).  The court concluded that in  light of the overwhelming evidence against Fulks, trial counsel employed a valid and reasonable trial strategy.  Id. at 101.

In spite of the thorough analysis of trial counsel's decision to advise Fulks to provide a statement and to plead guilty, § 2255 counsel again raised these decisions as an issue in a Rule 59(e) motion.  As the district court pointed out in its order on the motion:  "Both of these claims were raised in the initial § 2255 petition, fully briefed and vigorously argued before this court issued its August 25, 2010 order."  Attach. A at p. 15.  The court observed that it had permitted Fulks' habeas counsel, at government expense, to call an expert witness, Andrea Lyons, from Chicago, who offered an opinion on the subject.  Id.  The district court concluded:  "Because the court has already heard extensive testimony from a self-proclaimed expert in this area of the law and rejected it, the court cannot countenance an effort to supplement the record to boost arguments that have previously been determined unavailing by this court."  Id.

Fulks challenges his counsel's effectiveness regarding this issue yet a third

time in his current § 2241 motion.  He has provided no new evidence indicating that he is not guilty, and he has alleged nothing to suggest that the trial court erred.  Consequently, Fulks has had ample opportunity to have his claim reviewed, and this Court should determine that this claim provides no basis for a habeas motion.

3. <u>Claim That the District Court Erred by Allegedly Refusing to Postpone the Evidentiary Hearing for the § 2255 Petition to Allow Further Exploration of the Sexual Abuse Issue and Expert Testimony Relating to the Issue</u>

As the district court pointed out in its order denying Fulks' Rule 59 motion, <u>id.</u> at 4, Fulks' initial § 2255 petition included an allegation that he had been sexually abused as a child, and that trial counsel Blume was constitutionally ineffective for failing to fully explore this issue and develop it through testimony at trial.  <u>See</u> Case No. 4:02-cr-00992-JFA (D.S.C.), Dkt. No. 1090, pp. 44-45. However, in a pro se motion Fulks filed subsequent to the filing of the initial petition, he referred to "the lies of sexual abuse and also the wrongful representation of counsel in this case."  <u>Id.</u>, Dkt. No. 1231.  "Later, in a status conference conducted on October 5, 2009, Fulks, who appeared at the conference via video satellite, informed the court that he did not want to go forward with the sexual abuse allegation and, further, that he was upset with his attorneys for having inserted this claim in the § 2255 petition without his consent."  Attach. A, p. 4. Fulks' § 2255 counsel responded that they had already determined that the sexual abuse allegation would be dropped. <u>Id.</u>; <u>see</u> <u>also</u> Minute Entry, Dkt. No. 1256.  The

10

district court noted in a subsequent order that Fulks had informed the court that he was abandoning his claim relating to allegations of sexual abuse.  Id. Dkt. No. 1258.

Even though Fulks abandoned his claim of sexual abuse, the district court addressed the merits of the claim in its order denying Fulks' Rule 59 motion. Attach. A, pp. 16-20.  The court noted that Blume testified that he felt it was likely that Fulks had been sexually abused, but that multiple members of the trial team had questioned Fulks, and he had denied sexual abuse by family members.  Id. at 17.  Nonetheless, Fulks' trial team was able to put together information regarding sexual abuse, which, along with other mitigation evidence regarding the deplorable conditions of Fulks' childhood, painted a "compelling and empathetic picture of young Chad Fulks" for the jury.  Id. at 17-18 (quoting order denying relief under § 2255).  Observing that "Fulks has on several occasions demonstrated an uncanny ability to deceive," and briefly outlining some of the incidents of deceit, the court concluded that "Fulks's recently-recalled incidents of family sexual abuse warrant a degree of skepticism at this juncture in the litigation." Id. at 19.

The court also noted Blume's recognition that evidence of repeated sexual abuse as a child could have been a double-edged sword.  Id.  Citing a Seventh Circuit case, the court speculated that if jurors believed that Fulks' propensity for sexually violent conduct directed at women, which was abundantly detailed

11

through the testimony of Fulks' girlfriends and former wives, was caused by extensive sexual abuse, "they may have concluded that Fulks' violent sexual proclivities were due to forces beyond his control and that capital punishment was necessary to incapacitate Fulks from committing further violent sexual acts." Attach. A at 20. Pointing to its previous order, the court reiterated: "[I]f it takes this [§ 2255] defense team, which is a very fine world-class team of defense attorneys, twenty-nine months and it still has not been able to ferret out any information about sexual abuse, especially when it is information that Mr. Fulks would be presumably in possession of . . . I think it's a real uphill battle to argue that Mr. Blume was ineffective in not developing it in the sixteen months that he had." Id. at 20.

4. Allegations That Four Witnesses Received Special Concessions which were Not Disclosed by the Government

In the district court's Order denying Fulks' Rule 59(e) Motion to Alter or Amend, the court pointed out that in Claims 20 and 21 of his amended § 2255 motion, Fulks argued that his due process rights under Brady v. Maryland, 373 U.S. 83, 87 (1963), had been violated by the prosecution's attempt to influence witness testimony through intimidation and improper deal-making. Attach. A at 21. Fulks' Rule 59 motion supplemented the previous claims with four affidavits – three by trial witnesses and one by someone claiming to have had a conversation with one of the witnesses two years prior to the affidavit. Id. at 21. The court

12

observed that the claim relates to four of 156 witnesses who testified, and that "[i]n many respects, the testimony of the witnesses was corroborated by that of other witnesses." Id. The court then addressed the claims of each affiant.

The court observed that affiant Beth McGuffin's testimony was the subject of a claim in the original § 2255 petition, wherein Fulks argued that McGuffin had not been properly prepared by the defense prior to testifying. Attach A at 22. In a declaration obtained after the § 2255 hearing, McGuffin claimed that after Fulks' arrest, she was subjected to multiple and confrontational interviews with West Virginia FBI agents, who repeatedly accused her of complicity in the death of the West Virginia college student kidnapped by Fulks and codefendant Basham. Id. at 22. The court found that McGuffin's affidavit did not state anything that would amount to government misconduct or suppression. Id. at 23.

Another witness from whom Fulks' counsel obtained an affidavit was Fulks' first wife, Amber Fowler, who, like others, testified regarding the physical and sexual violence inflicted upon her by Fulks during their relationship. Attach. A at 23-24. She claimed that when she was not called to testify on Friday as had been planned, the FBI agent gave her $400 for food, lodging, and incidentals for the intervening weekend so she could remain in South Carolina. Id. at 24. She also claimed that she was "shocked" to get a check in the amount of $1,500 for per diem expenses as a result of her trip to South Carolina to testify. Id. Fowler

claimed that the agent told her that she "had to show some emotion" during her testimony.  Id.

The court's Order noted that the Government submitted an affidavit by the FBI agent stating that he had provided Fowler with $60, not $400, and attached a copy of a hand-written receipt that had been witnessed by an assistant United States attorney.  Attach. A at 24.  In denying relief, the court pointed out that Fowler's testimony was cumulative to the testimony of other female witnesses, and that the amount of money Fowler claimed to have received from the Government hardly seemed excessive for a witness from West Virginia who was in Columbia, South Carolina for a week.  Id. at 25.

Veronica Evans, Fulks' second wife, provided an affidavit to habeas counsel stating that she had lied when she testified that she had made no deals with the Government.  Attach A. at 25.  Evans, who also testified about the physical and sexual abuse inflicted by Fulks, claimed that she had been promised that her criminal record would be expunged of convictions for child endangerment and receiving stolen property in exchange for her testimony against Fulks.  Id. at 25. She stated that she had been threatened that if she did not testify against Fulks, her probation would be revoked and she would have to serve a fifteen year sentence. Id.  The court found the information in the affidavit to be immaterial because:  (1) the declaration was too vague to support a finding that the Government had made

14

any undisclosed deals with Evans; (2) any incorrect statements Evans made during her testimony regarding her probationary status were irrelevant; and (3) her testimony regarding physical and sexual abuse were cumulative.  Id. at 25-26.

The fourth affidavit was by a person who did not testify, but who claimed to have had a conversation with witness Tina Severance.  Attach. A at 26.  Severance was a former correctional officer who developed a relationship with Fulks and accompanied him and codefendant Basham on their seventeen-day crime spree after they escaped from a Kentucky jail.  Id.  The affiant stated that Severance told her that, contrary to her testimony, the FBI wanted her to lie about Fulks to make him look worse.  Id. at 27.  The affiant claimed that Severance said she was happy that her deal with the FBI allowed her to stay out of jail and to put Fulks on death row.  Id.

The court pointed out that the statements were hearsay assertions and that they were made two years after the purported statements by Severance.  Attach. A at 27.  The court stated:  "It strains credulity to accept the notion that a third-party witness would wait two years to come forward with damning information and then provide that information in the narrow two-week window between the appointment of Fulks's new habeas counsel and the filing of a motion to alter or amend."  Id. at 27-28.  The court continued:  "[T]he declaration contains what must be considered as exaggerations, to say the least."  Id. at 28.  The court gave as an example the

15

affiant's statement that Severance said she knew Fulks did not commit murder, and that she was "glad" that she helped "frame" him.  Id.  The court observed that "[t]here is no way that Severance could know for a fact whether Fulks or Basham, or both, committed the murder of  Alice Donovan."  Id.  The court pointed out that Severance's testimony was corroborated in many respects by the testimony of another trial witness, Andrea Roddy.  Id.

V.      **Additional Specifications of Ineffectiveness of § 2255 Counsel**

Fulks' § 2241 motion further asserts that his § 2255 counsel did not have capital litigation experience and that the attorneys appointed subsequent to the South Carolina District Court's order denying him relief on his § 2255 motion had a conflict of interest.  Both claims lack merit.

1. Qualifications of § 2255 Counsel

Fulks complains that his original § 2255 counsel had no capital litigation experience, and that they provided ineffective assistance because they did not raise all of the issues that could have been raised in his § 2255 petition.  Dkt. No. 6, Petitioner's Response to the Court's Entry Directing Further Proceedings, p. 2.

There is no requirement for counsel representing death penalty defendants in § 2255 motions to have prior capital litigation experience.  In a post-conviction proceeding under § 2255, seeking to vacate a death sentence, a prisoner is "entitled to the appointment of one or more attorneys."  18 U.S.C. § 3599(a)(2).  If the

16

appointment is made after judgment, at least one of the appointed attorneys "must have been admitted to practice in the court of appeals for not less than five years, and must have had not less than three years experience in the handling of appeals in that court in felony cases."  18 U.S.C. § 3599(c).

The district court's appointments exceeded the basic requirements of §3599(c).  As the court noted in its order appointing Beattie Ashmore as counsel for Fulks, Ashmore was admitted to the Fourth Circuit Court of Appeals for the Fourth Circuit in 1992, worked as an Assistant United States Attorney for the District of South Carolina for six years, and had significant capital and indigent criminal defense experience, including handling both appellate matters and general criminal defense.  CR No. 4:02-992-JFA, Dkt. No. 1026.  His trial experience included serving as lead counsel in dozens of criminal trials.  Id.

In addition to Ashmore, the court appointed Kirsten Small, who graduated from Georgetown University Law Center in 1994 and served as law clerk to former Fourth Circuit Court of Appeals Judge William Wilkins from 1994 until 2007.  Id., Dkt. No. 1117.  At the time of her appointment to represent Fulks, Small was working as part of an appellate litigation team for a large South Carolina law firm. Id.  Ashmore and Small were quite capable of representing Fulks in his § 2255 litigation, as is obvious from the quality and thoroughness of Fulks' § 2255 petition, various other motions filed by Ashmore and Small, and their

17

representation during the evidentiary hearing.  Additionally, Ashmore and Small were assisted by six pro bono attorneys from the California firm of O'Melveny & Meyers.  Id., Dkt. No. 1376 at 3.  Thus, Fulks' complaint regarding the qualifications of his § 2255 counsel has no merit.

### 2. Conflict of Interest

Fulks claims that his § 2255 counsel had a conflict of interest because one of the attorneys working for the PCHU, Tim Kane, was a Cornell University law student at the time Fulks' case was being prepared, and, as a student, assisted with the investigation of Fulks' case in preparation for trial.[1]  Dkt. No. 1 at p. 4-5. Fulks complains that "[i]t cannot be known at this point what impact this conflict had on Mr. Fulks' challenge against his trial attorneys."  Fulks seems to assert that this alleged conflict is the reason his original habeas team did not raise the four issues raised in the Rule 59(e) motion.  The problem with this claim is that the former law student of whom Fulks complains did not work for the original habeas team, but, rather, he worked for the subsequently-appointed PCHU, whose attorneys raised the four issues, discussed above, in the Rule 59 motion.

A conflict of interest exists in requiring a petitioner's counsel to identify and investigate potential errors that they themselves may have made in failing to uncover ineffectiveness of trial counsel while they represented a petitioner.

---

[1] The Government has no knowledge of whether or when Mr. Kane worked for the PCHU.

Juniper v. Davis, 737 F.3d 288, 289-290 (4th Cir. 2013).  Besides the fact that the

attorney allegedly working at the PCHU was not part of the § 2255 team that filed

the original and amended petitions and represented Fulks during the initial six-day

hearing, the other obvious error with Fulks' claim is that the law student did not

represent Fulks, but was merely one of several law students who assisted with

investigations and was supervised by Blume and co-counsel Sherri Johnson.

Additionally, the petition filed by Fulks' original § 2255 team included a

claim that trial counsel was ineffective for assigning law students to "critical

aspects of the mitigation investigation."  Fulks v. United States, CR No. 4:02-992-

JFA, Dkt. No. 1326 at p. 63.  The original claim was supported with a declaration

by Tim Kane, the alleged PCHU attorney about whom Fulks complains.  Id. , Dkt.

No. 1090-13.  In the declaration, Kane claimed that, as a law student at Cornell

University, he worked on Fulks' case during the fall semester of 2003 and the

spring semester of 2004. Id.  He stated that during the first semester, he drafted

motions and memoranda for John Blume, and during the second semester, he

worked on preparing the opening statement for trial.  He stated that during both

semesters, he "also did some work on locating and interviewing witnesses." Id.

Kane stated that Blume did not provide adequate training for the students, that they

did not have a full picture of what was happening, and that, based on his sense of

the case, "Chad Fulks suffered from some form of severe sex abuse in his

19

childhood," and that "sex abuse suffered by Chad Fulks should have been more of a focus of the investigation and that more resources should have been devoted to this." Id.   Clearly, Kane's prior experience as a clinic law student being supervised by Blume did not impede his efforts to assist in identifying potential errors by Blume while Blume was representing Fulks.

The court, in its Order denying § 2255 relief discussed Blume's testimony regarding his use of law students.  Dkt. No. 1326 at 63-67.  The Order noted that Blume testified that he "wanted to try and get out in front" of government investigators in talking to potential witnesses in numerous locations over a wide geographic area, so he used four or five law students to assist the two professional, retained investigators.  Id.  Trial counsel did not send law students to interview powerful material witnesses or Fulks' relatives.2  Id.  The court found that trial counsel reviewed all of the law students' interview reports and followed up on any of them that had anything that appeared the least bit promising. The court also found that the students were highly supervised by trial counsel and that their work on the case was limited.  Id. at p. 67.

Fulks has failed to show that Tim Kane, as a law student, had any significant role in the investigation of Fulks' case.  Further, jury selection for Fulks' trial began

---

2 Kane was one of two law students Blume allowed to go alone to interviews, because Kane had worked for several years as an investigator for a capital defense unit in San Francisco prior to attending law school. Id.

on May 17, 2004, and the trial began on June 1, 2004, so it is unlikely that Kane was a clinic law student at the time, since his last semester in the law clinic was the Spring of 2004 semester.  Further, Fulks has provided nothing to support his suggestion that any PCHU attorney, much less Tim Kane, was involved with preparing Fulks' § 2255 petition.  Consequently, Fulks has failed to carry his burden of showing a basis for his claim that his § 2255 counsel labored under a conflict of interest, and he has alleged nothing to show any prejudice, since he has not asserted any claim that has not been addressed by the trial court in the District of South Carolina.

## VI.   Conclusion

Fulk has failed to raise any substantive issue which was not raised and considered during § 2255 litigation.  Additionally, he has failed to show any conflict regarding the representation of his current counsel at the PCHU.  Neither has he shown any prejudice resulting from the alleged conflict.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

By:   s/ Winfield D. Ong
Winfield D. Ong
Assistant United States Attorney
10 W. Market Street
Suite 2100
Indianapolis, IN 46204
(317) 226-6333

21

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2015, a copy of the foregoing was electronically filed with the court which sent notification of such filing to the following.  I hereby certify that I have mailed by first Class U.S. Mail, postage prepaid and properly addressed to the non CM/ECF participant.

Chadrick Fulks
Reg. No. 11617-074
Terre Haute - USP
P.O. Box 33
Terre Haute, IN 47808

By:    s/ Winfield D. Ong
　　　Winfield D. Ong
　　　Assistant United States Attorney