# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## TERRE HAUTE DIVISION

| | |
|---|---|
| CHADRICK EVAN FULKS, | CIVIL ACTION |
| Petitioner, | (Capital Habeas Corpus) |
| v. | |
| J. E. KRUEGER, Warden, USP Terre Haute, UNITED STATES OF AMERICA | No. 2:15–cv–00033–WTL–MJD |
| | **Hon. James R. Sweeney II** |
| Respondents. | **United States District Judge** |

## PETITONER'S REPLY IN SUPPORT OF AMENDED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

PETER WILLIAMS
CLAUDIA VAN WYK
Assistant Federal Defenders
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Tel: 215.928.0520
Fax: 215.928.0826
pete_williams@fd.org
claudia_vanwyk@fd.org

*Counsel for Petitioner*

Dated: July 12, 2019

## PRELIMINARY STATEMENT

Petitioner Chadrick Evan Fulks shall be referred to herein as Petitioner or Mr. Fulks. Respondent shall be referred to as the Government. Mr. Fulks's March 8, 2019, Amended Petition for Writ of Habeas Corpus Pursuant ("Amended Petition") shall be cited as "AP" followed by the relevant page number(s). The Government's June 12, 2019, Response shall be cited as "GR" followed by the relevant page number(s). Cites to pages in the Appendix filed with Mr. Fulks's Amended Petition shall be referred to as "App." followed by the relevant page number(s).

All other citations are either self–explanatory or will be explained.

All emphasis in this Reply is supplied unless otherwise indicated.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................... i

TABLE OF CONTENTS ........................................................................................................... ii

I.      MR. FULKS'S *ATKINS* CLAIM IS COGNIZABLE UNDER 28 U.S.C. § 2241. ................ 1

    A.      Section 2255 Is Inadequate or Ineffective to Test Mr. Fulks's *Atkins* Claim. ................ 2

       1.      Mr. Fulks's constitutional claim may be brought under § 2241.................................. 2

       2.      Mr. Fulks could not have raised his *Atkins* claim at trial or in his initial § 2255 motion. ...................................................................................................................... 5

       3.      Mr. Fulks has identified a structural problem with § 2255; his claim need not match the precise facts of either *Davenport* or *Webster* to be cognizable under § 2241. ....... 8

    B.      Mr. Fulks May Proceed Under § 2241 Because He Challenges the Execution, Not the Imposition, of His Sentence. ......................................................................................... 9

II.     BECAUSE MR. FULKS HAS THE SAME INTELLECTUAL AND ADAPTIVE DEFICITS EXHIBITED BY THE INTELLECTUALLY DISABLED, HE IS CATEGORICALLY INELIGIBLE FOR THE DEATH PENALTY REGARDLESS OF WHETHER HE SATISFIES ALL THE CRITERIA FOR INTELLECTUAL DISABILITY. ..................................................................................................................... 10

CONCLUSION .................................................................................................................... 17

Mr. Fulks raised two claims for relief in his Amended Petition, each of which establishes that he is categorically ineligible for the death penalty. First, Mr. Fulks claimed that he is intellectually disabled ("ID") and thus his execution is barred by *Atkins v. Virginia*, 536 U.S. 304 (2002), and its progeny. Second, Mr. Fulks claimed that even if he is not ID, he is ineligible for execution on functional grounds because his impairments satisfy all the requirements set forth in *Atkins*, and the Supreme Court has established that the Eighth Amendment forbids the execution of a person whose impaired functioning meets a constitutional test of categorical ineligibility, regardless of the underlying medical diagnosis. In addition, Mr. Fulks established that each of his two claims is cognizable under 28 U.S.C. § 2241.

In its Response, the Government does not contest Mr. Fulks's allegations that he is intellectually disabled, beyond making a general denial of those allegations in a footnote. GR at 45 n.14. Therefore, the facts alleged in the petition must be presumed to be true. *See, e.g.*, *Blackledge v. Allison*, 431 U.S. 63, 76 (1977). Because the Government limits its Response to challenging this Court's jurisdiction to entertain Mr. Fulks's claims, this Reply is limited to addressing those arguments. Should this Court grant the Government additional briefing to respond to the merits of Mr. Fulks's claims, Mr. Fulks respectfully requests the opportunity to reply to that additional briefing.

## I.      MR. FULKS'S *ATKINS* CLAIM IS COGNIZABLE UNDER 28 U.S.C. § 2241.

In his Amended Petition, Mr. Fulks established that his *Atkins* claim is cognizable under § 2241 because: (i)  28 U.S.C. § 2255 is "inadequate or ineffective" to test the legality of the claim within the meaning of the § 2255(e) "savings clause"; and (ii) Mr. Fulks is challenging the execution, as opposed to the imposition, of his sentence. The Government's Response fails to meaningfully challenge either of these jurisdictional bases for Mr. Fulks's claim.

1

**A.      Section 2255 Is Inadequate or Ineffective to Test Mr. Fulks's *Atkins* Claim.**

The Government acknowledges that a federal prisoner is entitled to § 2241 review under the savings clause when the remedy under § 2255 is "inadequate or ineffective to test the legality of his" sentence. GR at 18–19 (citing § 2255(e)). Yet the Government contends that Mr. Fulks cannot proceed with his *Atkins* claim under § 2241 because: (i) he raises a constitutional claim, which can "never be brought" under § 2241; (ii) there was "no barrier to his ability" to raise the claim at trial or in his initial § 2255 motion; and (iii) his claim does not match the precise facts of either *In re Davenport*, 147 F.3d 605 (7th Cir. 1998), or *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015). *See* GR at 17–33. The Government errs on all counts.

As discussed above, this Court must presume the truth of Mr. Fulks's allegations. In particular, it must presume that he is intellectually disabled, such that his execution would violate the Eighth Amendment under *Atkins* and its progeny. *See* AP at 5–45. Further, it must presume that his claim was not viable before new diagnostic criteria were adopted in 2012 and 2013, and then given constitutional significance by the Supreme Court's decisions in *Hall v. Florida*, 572 U.S. 701 (2014), and *Moore v. Texas*, 137 S. Ct. 1039 (2016) ("*Moore–I*"). *See* AP at 47–55. As Mr. Fulks has shown, in these circumstances the remedy under § 2255 "is inadequate or ineffective to test the legality," 28 U.S.C. § 2255(e)(1), of his death sentence.

**1.      Mr. Fulks's constitutional claim may be brought under § 2241.**

As an initial matter, the Government argues that *Atkins* claims "can never be brought under § 2241 because such claims are constitutional and thus do not categorically elude the permission for successive § 2255 motions." GR at 17. In support of this argument, the Government relies on the passage of the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA"), through which Congress sought to "define limited circumstances that permit successive collateral attacks." *Id.* at 28. In particular, the Government cites to the enactment of

§ 2255(h), which provides that a successive § 2255 habeas motion will be authorized only where the claim contains: (i) new evidence establishing innocence of the offense; or (ii) a new rule of constitutional law made retroactive by the Supreme Court. According to the Government, a "claim based on a new constitutional case does not fall within the savings clause because . . . § 2255(h) already provides a remedy" for new constitutional cases. *Id.* at 28; *see also id.* ("[T]he savings clause allows a claim to proceed under § 2241 only when it is based on a new rule of *statutory* law.") (emphasis in original). Hence, it is the Government's position that because Mr. Fulks's claim invokes two constitutional decisions that have not been ruled retroactive by the Supreme Court— *Hall* and *Moore–I*—he can proceed *neither* under § 2255(h) *nor* under the savings clause.

A similar argument was rejected in *Webster*, in which the en banc Seventh Circuit recognized that AEDPA was enacted before the Supreme Court had held it categorically unconstitutional to execute either an intellectually disabled person (as it did in *Atkins*) or a minor (as it did in *Roper v. Simmons*, 542 U.S. 551 (2005)). *See Webster*, 784 F.3d at 1138. In *Webster*, the Government made an argument nearly identical to the one it makes here, albeit relying on a different prong of § 2255(h). Specifically, because Mr. Webster's claim relied on newly discovered evidence establishing his ineligibility for death, the Government argued that the reference in § 2255(h)(1) to evidence establishing innocence of *"the offense"* signaled a congressional intent to bar successive claims based on new evidence establishing innocence of *the death penalty*, even when the claim is based on a categorical exclusion. *See id.* at 1137–38. The court rejected this argument, explaining that Congress could not have even contemplated successive claims of categorical ineligibility for execution at the time AEDPA was pending. As a result, there is a "lacuna in the statute" for the "narrow set of cases" presenting such issues. *Id.* at

1138. The *Webster* court also acknowledged that construing these cases "to be beyond the scope of the savings clause, would (or could) lead to an unconstitutional punishment." *Id.* at 1139.[1] Thus, both as a matter of statutory interpretation and in light of "the fact that a core purpose of habeas corpus is to prevent a custodian from inflicting an unconstitutional sentence," the court held that § 2255 may prove ineffective under the savings clause in "cases presenting issues of constitutional ineligibility for execution." *Id.* at 1138–39.

The fact that AEDPA was passed prior to *Atkins* also defeats the Government's argument here that the language of § 2255(h)(2) categorically precludes application of the savings clause to any constitutional claim not based on a rule made retroactive by the Supreme Court. The Government attempts to distinguish *Webster* on the ground that it involved newly discovered evidence. *See* GR at 31–32. But the Government's distinction is meaningless in light of the reasoning (as opposed to the facts) behind *Webster*. The concern in *Webster* was that an unintentional omission in § 2255 forecloses relief to any petitioner who is categorically ineligible for execution. Indeed, in distinguishing earlier cases in which it employed more restrictive language interpreting the savings clause, the *Webster* court explained that those cases did not involve "an argument that a particular sentence was constitutionally forbidden (*either as a matter of law or as a matter of fact*)." *Webster*, 784 F.3d at 1137. Accordingly, the Government's attempt to bar all *Atkins* claims from the purview of the savings clause necessarily fails.

---

[1] In fact, this is precisely what would have occurred had the Seventh Circuit not allowed Mr. Webster to proceed under § 2241, as demonstrated by the district court's recent decision on remand. *See Webster v. Lockett*, No. 2:12–cv–86–WTL–MJD, 2019 WL 2514833, at *1 (S.D. Ind. June 18, 2019) (holding, on review of the merits of Mr. Webster's § 2241 *Atkins* claim, that petitioner "has satisfied his burden of proving his intellectual disability by a preponderance of the evidence and is thus ineligible for the death penalty").

In sum, just like Mr. Webster, Mr. Fulks has a claim of categorical ineligibility for execution that could not have been raised at trial or in his initial § 2255 motion. And, just like Mr. Webster, the fact that AEDPA was enacted before the Supreme Court had decided *Atkins* leaves Mr. Fulks "without anywhere to turn." *Id.* at 1139. Thus, just like Mr. Webster, Mr. Fulks must be permitted to raise his *Atkins* claim under § 2241.

>### 2. Mr. Fulks could not have raised his *Atkins* claim at trial or in his initial § 2255 motion.

As Mr. Fulks details in his Amended Petition, his claim of categorical ineligibility for the death penalty relies on new legal and factual bases not available at the time of his trial or his § 2255 proceedings. *See* AP at 47–54 (describing how legal developments announced in *Hall* and *Moore–I*, as well as diagnostic developments adopted by the American Association on Intellectual and Developmental Disabilities and the American Psychiatric Association in 2012 and 2013, respectively, allowed him to assert a previously-unavailable *Atkins* claim). Relying on faulty arguments, the Government contends "there was no barrier" to Mr. Fulks's ability to raise his *Atkins* claims "at trial, on appeal, or in his first § 2255 motion." GR at 17.

First, the Government argues that "[a]t no point has the law precluded Fulks's claim that he is intellectually disabled and thus ineligible for the death penalty under *Atkins*." GR at 30. This proposition ignores the reality that prior to *Hall*, numerous jurisdictions outright rejected *Atkins* claims from any petitioner who had an IQ score above 70, refusing to consider evidence of the petitioner's adaptive deficits based on a number alone. *See Hall*, 572 U.S. at 705 (striking down Florida statute applying a strict-IQ cutoff of 70 and holding "an individual's ability or lack of ability to adapt or adjust to the requirements of daily life, and success or lack of success in doing so, is central to . . . diagnosing intellectual disability"). And while *Hall* made clear for the first time that States did not have "unfettered discretion to define the full scope of the

5

constitutional protection" identified in *Atkins*, *id.* at 719, it was not until *Moore–I* that the Supreme Court *required* that courts evaluate claims of ID under the "medical community's *current standards*," which "offer the 'best available description of how mental disorders are expressed and can be recognized by trained clinicians.'" *Moore–I*, 137 S. Ct. at 1053.[2]

As detailed in Mr. Fulks's Amended Petition, *Hall*'s pronouncement that "[i]ntellectual disability is a condition, not a number," *id.* at 723, was a critical legal development for his ability to satisfy prong one of the test for ID. *See* AP at 8–10, 48–49. The same is true for *Moore–I*'s mandate that courts apply current medical standards in evaluating ID claims, as those current standards require, inter alia, application of the Flynn Effect and practice effect, and dictate that IQ scores be assessed in relation to adaptive deficits. *Id.* at 8–10, 49–51. *Moore–I*'s impact was even more profound as to prong two of the test for ID, as it put an end to the common practice of courts—including the Fourth Circuit[3]—of rejecting diagnostic criteria in favor of: employing lay stereotypes of ID; overemphasizing the petitioner's perceived adaptive strengths; considering the

---

[2] According to the Government, *Moore–I* merely "applied *Hall* and faulted the Texas Court of Criminal Appeals for concluding that the petitioner's IQ scores, some of which were at or below 70, established that he was not intellectually disabled." GR at 17. While *Moore–I* does address this issue, the Government either misunderstands or misrepresents the true significance of *Moore–I*, which wholly invalidated the longstanding approach of Texas courts (and, by extension, many other courts) to assessing adaptive deficits under prong two. *See, e.g.*, *Moore–I*, 134 S. Ct. at 1044 (summarizing the holding of the Court as vacating the Texas high court's decision because its approach to adaptive functioning is "an invention" of the court "untied to any acknowledged source," "[n]ot aligned with the medical community's information" or the Court's precedent, that creates "an unacceptable risk that persons with intellectual disability will be executed"); *Moore v. Texas*, 139 S. Ct. 666 (2019) ("*Moore–II*") (explaining that *Moore–I* struck down the Texas high court's "adaptive-functioning analysis" based on "at least five errors" that "had no grounding in prevailing medical practice, and [that] invited 'lay perceptions of intellectual disability' and 'lay stereotypes' to guide assessment of intellectual disability").

[3] Mr. Fulks was sentenced by the District Court for South Carolina, which was also the court that denied his first § 2255 motion. The Fourth Circuit upheld both of these decisions on appeal. *See United States v. Fulks*, 454 F.3d 410 (4th Cir. 2006); *United States v. Fulks*, 683 F.3d 512 (4th Cir. 2012).

6

petitioner's criminal conduct and behavior in prison as part of the adaptive deficits analysis; and treating risk factors as alternative explanations of, as opposed to contributing factors to, ID. *See id.* at 51–53. Indeed, as Mr. Fulks has already explained, the district court that presided over his sentencing and § 2255 proceedings rejected an *Atkins* claim raised by his co–defendant based on an adaptive–deficits analysis directly at odds with then–current diagnostic standards. *Id.* at 52–53. Any suggestion that Mr. Fulks had a viable *Atkins* claim prior to *Moore–I* is refuted by the treatment of Mr. Basham's claim.

The Government's position that Mr. Fulks could have presented his *Atkins* claim at the time of trial also ignores the new diagnostic standards detailed in Mr. Fulks's Amended Petition. *See* AP at 50–54. While the Government quibbles with the characterization of these standards as "newly discovered evidence"—insisting they are "merely [] development[s] in the framework followed by medical professional[s] in diagnosing intellectual disability," GR at 32—this argument misses the point. The indisputable reality is that Mr. Fulks could not have availed himself of these developments to raise a successful *Atkins* claim at trial or in his initial § 2255 motion, and cannot do so now through a successive § 2255 motion.

Ultimately, the Government itself implicitly recognizes that the legal and diagnostic landscape did not allow for Mr. Fulks to assert a viable *Atkins* claim in earlier proceedings. Specifically, in recounting the history of this case, the Government states that the "mental health case prepared for and presented in Fulks's sentencing phase was exhaustive," but also recognizes that Mr. Fulks "did not pursue an *Atkins* claim of mental retardation/intellectual disability during his trial" and that "[n]one of the experts found him to be mentally retarded" at that time. GR at 10, 13. By contrast, relying in large part on *the same underlying data* reviewed by Mr. Fulks's mental health experts in 2003 and 2004, but applying *current diagnostic criteria*, as mandated by

7

*Hall*, *Moore–I*, and *Moore–II*, neuropsychologist Barry M. Crown, Ph.D., diagnosed Mr. Fulks as intellectually disabled in 2019. *See* Report, Barry M. Crown, Ph.D. (App. 0001–09).

> **3.** **Mr. Fulks has identified a structural problem with § 2255; his claim need not match the precise facts of either *Davenport* or *Webster* to be cognizable under § 2241.**

The Government's final argument is that, "[e]ven if § 2241 relief could be sought for a constitutional error," Mr. Fulks's *Atkins* claim is barred because it "does not fall within either of the narrow paths for § 2241 relief set forth by the Seventh Circuit in *Davenport* and *Webster*." GR at 17, 21. Yet the Seventh Circuit has never held, or even suggested, that these two cases represent the only circumstances under which the savings clause is available. To the contrary, *Webster* made clear that the only requirement for establishing § 2241 jurisdiction through the savings clause is that there be "some kind of structural problem with section 2255." *Webster*, 784 F.3d at 1136. As established above, Mr. Fulks presents the same structural problem (if not the same fact pattern) found to exist in *Webster*, namely: a lacuna in § 2255 resulting from the fact that AEDPA was passed prior to the Supreme Court's decisions in *Atkins*, *Hall*, and *Moore-I*, holding certain categories of persons to be per se ineligible for execution and delineating the standards applicable to such claims. *See id.* at 1139 ("It is fairly possible to read § 2255(e) as encompassing challenges to . . . sentences that *as a structural matter* cannot be entertained by use of the 2255 motion," such as those falling within the "narrow set of cases" involving claims of categorical ineligibility for execution).

Notably, the Government defeats its own "*Davenport–or–Webster*" argument in acknowledging that § 2241 was available to the petitioner in *Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001), a case that involves no factual overlap with either *Davenport* or *Webster*. In *Garza*, petitioner sought to raise a claim under § 2241 based on the ruling of an international treaty body issued after his § 2255 proceedings concluded. In analyzing the jurisdictional issue, the *Garza*

8

court recognized generally that there are "circumstances" in which "the operation of the successive petition rules absolutely prevent[] the petitioner from ever having an opportunity to raise a challenge to the legality of his sentence." *Id.* at 922. One such circumstance was *Davenport*, which involved a retroactive change in statutory law, and another was Mr. Garza's case. *Id.*; *see also Webster*, 784 F.3d at 1137 (describing *Garza* as "*one illustration* of a situation in which petitioner was entitled under the savings clause to use section 2241 to attack a sentence"); *Poe v. Lariva*, 834 F.3d 770, 772 (7th Cir. 2016) (referring to a new retroactive statutory rule as just "*[o]ne circumstance* under which this court has permitted resort to § 2241").

In short, in *Davenport*, *Webster*, and *Garza*, the Seventh Circuit allowed claims to proceed under § 2241 because the petitioner identified a structural problem that rendered § 2255 "inadequate or ineffective" to test the petitioner's claim. In none of these cases did the petitioner present the same factual scenario as any other case in which the court found jurisdiction under § 2241. Here, Mr. Fulks has established that developments occurring after his trial and § 2255 proceedings show that he is categorically ineligible for execution. Yet because § 2255(h) was enacted prior to *Atkins*, "as a structural matter," Mr. Fulks's challenge to his sentence "cannot be entertained by use of the 2255 motion." *Webster*, 784 F.3d at 1139. Just as in Mr. Webster's case, "[t]o hold otherwise would lead . . . to the intolerable result of condoning an execution that violates the Eighth Amendment." *Id.*

**B.      Mr. Fulks May Proceed Under § 2241 Because He Challenges the Execution, Not the Imposition, of His Sentence.**

Mr. Fulks argues in his Amended Petition that, in addition to the reasons articulated above, he may raise his *Atkins* claim under § 2241 because he is challenging the *execution* of the

sentence, rather than the *imposition* of it. *See* AP 46, 54–55 (citing *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003), and *Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998)).

The Government's sole response to this argument appears in footnote 6 of its brief, in which it states, without elaboration, that Mr. Fulks is not challenging the execution of his sentence, but rather is challenging "his eligibility for the death sentence imposed." GR at 17 n.6. The Government simply restates Mr. Fulks's argument using different words: Mr. Fulks's sentence cannot be executed *because* he is now ineligible for the sentence imposed. *See Atkins*, 536 U.S. at 320 (establishing "categorical rule making [intellectually disabled] offenders ineligible for the death penalty"). Accordingly, the Government has failed to meaningfully raise any challenge to the jurisdictional basis presented in Section I.H.2 of Mr. Fulks's Amended Petition.

**II.     BECAUSE MR. FULKS HAS THE SAME INTELLECTUAL AND ADAPTIVE DEFICITS EXHIBITED BY THE INTELLECTUALLY DISABLED, HE IS CATEGORICALLY INELIGIBLE FOR THE DEATH PENALTY REGARDLESS OF WHETHER HE SATISFIES ALL THE CRITERIA FOR INTELLECTUAL DISABILITY.**

As Claim I explains, Mr. Fulks is prepared to prove that he meets each of the criteria for intellectual disability set forth in *Atkins v. Virginia*, and is thus ineligible for the death penalty. In addition, he is prepared to prove that, regardless of whether he meets all of the *Atkins* criteria, he is ineligible for the death penalty because he suffers from severe deficits in both intellectual and adaptive functioning. Those deficits are indistinguishable from those of an intellectually disabled person and thus bring him under the *Atkins* categorical exclusion—whether or not the cognitive deficits manifested before age 18. Moreover, he suffers from a fetal alcohol spectrum disorder, a disorder comparable in severity to intellectual disability in its effects on lifelong adaptive functioning. Because Mr. Fulks's deficits reduce his culpability in precisely the same way as the deficits of those who have received formal diagnoses of intellectual disability, they render him

categorically ineligible for death for the same reasons that moved the Supreme Court in *Atkins*. *See* AP at 56–69.

As the Amended Petition explains in greater detail, these arguments were unavailable to Mr. Fulks before the Supreme Court's recent decision in *Madison v. Alabama*, 139 S. Ct. 718 (2019), which applied a functional approach to a different form of categorical ineligibility, the constitutional prohibition on executing the presently "insane." Madison sought to prove that, because of his mental illness, he lacked a rational understanding of the reasons for his execution. The state court had rejected his claim because he suffered from dementia, not delusions, but the Supreme Court held his formal diagnosis constitutionally irrelevant. It remanded for a determination whether his impairments satisfied the appropriate Eighth Amendment test, regardless of etiology. *Id*. at 728–29 (citing *Ford v. Wainwright*, 477 US. 399 (1986), and *Panetti v. Quarterman*, 551 U.S. 930 (2007)).

Mr. Fulks does not claim that he is ineligible for death because he is "insane" under *Ford*, or because he lacks rational understanding of his situation. He argues that this Court must use *Madison*'s functional approach to determining whether he is ineligible for death under *Atkins*.

The Government fundamentally misconstrues and attacks this claim as a *Ford* claim. It argues that the claim is not yet ripe because execution is not imminent, GR at 34, 39; that, because Mr. Fulks can properly bring a new § 2255 petition if it does become ripe, § 2255 is not "inadequate or ineffective to test the legality of his detention," GR at 39; and that the petition does not state the elements of a claim for *Ford* relief. GR at 42. These contentions all take aim at a non-existent *Ford* target.

The Government also argues that "intellectual disability claims are not properly raised under *Ford* and its progeny," because the two lines of authority serve different policies and purposes—*Atkins* claims focus on culpability, while *Ford* claims focus on competency. The Government urges this Court to reject Mr. Fulks's effort to "conflate" them. GR at 44. This argument, too, rests on a misunderstanding of the reasons for Mr. Fulks's reliance on *Madison*. The Supreme Court has recognized several areas of categorical exclusion from death-eligibility, each with its own criteria. *Madison* establishes that the Eighth Amendment requires a reviewing court to apply the respective criteria functionally, by asking whether the defendant's impairments satisfy them, regardless of diagnostic label. Mr. Fulks asks this Court to follow *Madison* by taking a functional approach to its application of the *Atkins* criteria. Mr. Fulks does not ask this Court to apply the *Ford* criteria.

In another line of argument, the Government adopts an unduly narrow view of the scope of the "savings clause" in 28 U.S.C. § 2255(e), which allows a federal prisoner to petition for habeas corpus if § 2255 is "inadequate or ineffective to test the legality of [the prisoner's] detention." A successive § 2255 motion is unavailable to Mr. Fulks because the new evidence on which he relies does not establish his factual innocence, and the Supreme Court has neither explicitly declared *Madison* retroactive nor applied its functional approach to an *Atkins* claim. See 28 U.S.C. § 2255(h)(1), (2); *Talbot v. Indiana*, 226 F.3d 866, 868–69 (7th Cir. 2000) (successive petition under §§ 2244 and 2255 available only if retroactive application declared "by the Supreme Court itself").

As discussed in the Amended Petition at 45–46 and Claim I above at 7–9, the Seventh Circuit, like other Circuits, has recognized that a variety of situations may satisfy the savings clause. *See Webster*, 784 F.3d at 1136; *Brown v. Caraway,* 719 F.3d 583 (7th Cir. 2013); *Garza*,

12

253 F.3d at 922; *Davenport*, 147 F.3d at 609. The Government recognizes these varying approaches in response to Claim I (*see* GR at 21–22), but in response to Claim II insists that a petitioner can satisfy the savings clause only with a claim involving statutory interpretation. GR at 40 (citing *Brown*, 719 F.3d at 586; *Davenport*, 147 F.3d 605). The law of this Circuit contradicts that assertion. *Webster*, decided two years after *Brown*, acknowledged that the Seventh Circuit has applied the savings clause in several sets of circumstances, not necessarily limited to statutory interpretation. 784 F.3d at 1136. *Webster* specifically recognized that "the narrow set of cases presenting issues of constitutional ineligibility for execution is another lacuna in the [§ 2255] statute." *Id*. at 1138. Mr. Fulks's categorical ineligibility claim falls into the same lacuna. He properly relies on the savings clause because a "structural problem" prevents him from filing a second § 2255 motion and he challenges the fundamental legality and execution of his sentence. *See* AP 68–69.

Courts have recognized that, when the timing of a petitioner's litigation deprives him or her of a fair opportunity to advance a claim relying on a new substantive rule under § 2255, the petitioner may sometimes proceed under § 2241. In *Bruce v. Warden, Lewisburg USP*, 868 F.3d 170, 181 (3d Cir. 2017), the petitioner relied on a new substantive rule that gave the applicable murder statute a narrower reach than circuit precedent had previously permitted. As a new substantive rule, the change applied retroactively to cases on collateral review under the *Teague v. Lane*, 489 U.S. 288 (1989) framework. *Id*. at 181. Because § 2255(h) does not permit successive petitions for new substantive rules based on statutory interpretation, the court held that the district court properly exercised jurisdiction under § 2241. *Id*. at 174, 183; *see also Holt v. United States*, 843 F.3d 720, 721-24 (7th Cir. 2016) (movant not entitled to file successive petition under § 2255(h) for substantive claim based on statutory construction, but court leaves

open question whether he could petition for relief under § 2241 in district of confinement). Mr. Fulks, to whom the successive-petition route is also closed for the reasons explained above, may likewise proceed under § 2241.

The Government's final argument is an internally inconsistent appeal to *Teague*. Initially, it states that if *Madison* creates a new rule, *Teague* forecloses relief. Several sentences later, however, it maintains that *Teague* bars relief because "*Madison* [did] *not* create a new rule at all." GR at 41 (emphasis added).

First, it is not clear that *Teague* applies to federal collateral review of a federal sentence. *See Welch v. United States*, 136 S. Ct. 1257, 1264 (2016) (assuming, without deciding, that *Teague* applies). Second, in addition to contradicting itself, the Government overlooks the key question: not whether *Madison* announced a new rule, but whether it announced a new substantive rule or a new rule of criminal procedure. *Teague* held that a federal habeas court may not grant relief on the basis of a new constitutional rule of criminal procedure announced after the petitioner's conviction became final. 489 U.S. at 310 (plurality opinion); *see also Montgomery v. Louisiana*, 130 S. Ct. 718, 728 (2016) (majority opinion). *Teague* does not bar habeas relief for a new substantive rule, which forbids "'criminal punishment of certain primary conduct' or prohibits 'a certain category of punishment for a class of defendants because of their status or offense.'" *Montgomery*, 130 S. Ct. at 732 (citing *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989)). The type of claim presented here—that Mr. Fulks is categorically ineligible for the death penalty—is a substantive rule applicable in habeas. *See Penry*, 492 U.S. at 330 ("[I]f we held, as a substantive matter, that the Eighth Amendment prohibits the execution of mentally retarded persons . . . such a rule would fall under the first exception to [*Teague*'s] general rule of non-retroactivity and would be applicable to defendants on collateral review."); *Price v. United*

*States*, 795 F.3d 731, 734 (7th Cir. 2015) (citing *In re Holladay,* 331 F.3d 1169, 1172–73 (11th Cir. 2003) ("no question" combined decisions in *Penry* and *Atkins* rendered *Atkins* rule substantive and retroactive)). Thus, in requesting an expansion of *Atkins* pursuant to *Madison*, Mr. Fulks is likewise seeking relief under a new substantive rule.

The Supreme Court's approach in *Montgomery* demonstrates the approach this Court should take in Mr. Fulks's case. *Montgomery* sought the retroactive application of the categorical rule of *Miller v. Alabama*, 567 U.S. 460 (2012), which forbade sentences of life without parole for juveniles. The Court explained the policy reasons for making substantive rules available by collateral attack:

> A conviction or sentence imposed in violation of a substantive rule is not just erroneous but contrary to law and, as a result, void. It follows, as a general principle, that a court has no authority to leave in place a conviction or sentence that violates a substantive rule, regardless of whether the conviction or sentence became final before the rule was announced. . . .
>
> A penalty imposed pursuant to an unconstitutional law is no less void because the prisoner's sentence became final before the law was held unconstitutional. There is no grandfather clause that permits States to enforce punishments the Constitution forbids. To conclude otherwise would undercut the Constitution's substantive guarantees.

*Montgomery*, 136 S. Ct. at 731.

The Court reviewed its "line of precedents" limiting the State's ability to impose certain punishments on different categories of juveniles, and indicated that "protection against disproportionate punishment is the central substantive guarantee of the Eighth Amendment." *Id*. at 732–33. *Miller*, like other cases in its line, announced a substantive rule that rendered life without parole unconstitutional "'for a class of defendants because of their status.'" *Id*. at 734. Accordingly, treating *Miller* as a substantive rule "comports with the principles that informed *Teague*." *Id*. at 736.

15

As in *Montgomery*, Mr. Fulks argues that he falls within a class of defendants—those functionally comparable to the intellectually disabled—for whom the death penalty is unconstitutional. His death sentence is void in the same way as the sentence imposed in *Montgomery*. *Teague* therefore imposes no bar to the retroactive application of the substantive *Madison* rule.

Mr. Fulks is entitled to proceed under § 2241 because, until *Madison*, circuit precedent would have foreclosed an *Atkins* claim by a petitioner who did not necessarily satisfy all three prongs of *Atkins*. This Court should accordingly entertain Claim II and, for the reasons above and in the Amended Petition, grant Mr. Fulks habeas relief.

## **CONCLUSION**

For the reasons above and in Mr. Fulks's amended petition, Petitioner requests that the Court provide the following relief:

A) That an evidentiary hearing be conducted on the merits of Petitioner's claims, any procedural issues, and all disputed issues of fact;

B) That leave to amend this Petition be granted, if necessary, after further fact development through investigation and an evidentiary hearing;

C) That Petitioner be allowed a reasonable time to file a memorandum of law in support of this Petition following any further fact development or following the denial of fact development; that the Government be allowed a reasonable time to respond; and that Petitioner be allowed a reasonable time to reply;

D) That habeas relief from Petitioner's sentence of death be granted.

<div style="margin-left:50%">

Respectfully submitted,

/s/ Peter Williams
PETER WILLIAMS
CLAUDIA VAN WYK
Assistant Federal Defenders
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Tel: 215.928.0520
Fax: 215.928.0826
pete_williams@fd.org
claudia_vanwyk@fd.org

</div>

Dated: July 12, 2019

**CERTIFICATE OF SERVICE**

I, Peter Williams, hereby certify that on this 12th day of July, 2019, a copy of the forgoing was served via ECF filing on the following persons:

Joe Howard Vaughn
Assistant United States Attorney
Office of the United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204–3048

Robert Frank Daley, Jr.
Kathleen Michelle Stoughton
Special Assistant United States Attorneys
1441 Main Street, Suite 500
Columbia, SC 29201

/s/ Peter Williams
Peter Williams