IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| CHADRICK FULKS, | ) | No. 2:15-CV-00033-JRS-MJD |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| *versus* | ) | |
| | ) | |
| J.E. KRUEGER, | ) | |
| *Warden, Terre Haute USP*, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>RESPONDENT'S SUPPLEMENTAL BRIEF</u>

JOSHUA J. MINKLER
UNITED STATES ATTORNEY

Joe Howard Vaughn
Assistant United States Attorney
United States Attorney's Office
10 West Market Street, Suite 2100
Indianapolis, IN 46204
Tel. (317) 229-2447
Fax (317) 226-6125
Email:  Joe.Vaughn@USDOJ.GOV

*and*

Robert Frank Daley, Jr.
Kathleen Michelle Stoughton
Special Assistant United States Attorneys
1441 Main Street, Suite 500
Columbia, SC 29201
Tel. (803) 929-3000
Fax (803) 929-3135
Email: Robert.Daley@USDOJ.GOV
Email: Kathleen.Stoughton@USDOJ.GOV

*Counsel for Respondent*

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ...................................................................................................... iv

I. THIS COURT SHOULD DENY FULKS' CLAIM THAT HE IS INELIGIBLE FOR THE DEATH PENALTY BASED ON HIS INTELLECTUAL AND ADAPTIVE FUNCTIONING DEFICITS BECAUSE IT RUNS AFOUL OF THE PRECEDENT ESTABLISHED BY *ATKINS* AND ITS PROGENY ................................................................... 2

II. THIS COURT SHOULD DENY FULKS' REQUEST THAT IT "EXPAN[D] *ATKINS* PURSUANT TO *MADISON*" BECAUSE SUCH AN APPROACH FINDS NO SUPPORT IN THE LAW ......................................................... 3

    A. Fulks' functional intellectual disability claim is, in fact, derived from the *Ford* line of cases, and it must be dismissed because it is not yet ripe ...................................................................................................................... 3

    B. This Court should reject Fulks' unsupported claim that *Madison* created a new "functional approach" to determining death penalty eligibility that renders ineligible those who are functionally comparable to the intellectually disabled.................................................... 3

III. THIS COURT SHOULD DISMISS FULKS' FUNCTIONAL INTELLECTUAL DISABILITY CLAIM BEAUSE IT DOES NOT SATISFY THE § 2255(e) SAVINGS CLAUSE AND THEREFORE CANNOT PROCEED UNDER § 2241 ............................................................ 11

    A. Fulks' claim does not fall within the narrow paths for § 2241 relief established by the Seventh Circuit........................................................ 12

    B. Fulks' claim is cognizable in a second-in-time § 2255 motion............................. 18

IV. CONCLUSION.............................................................................................................19

CERTIFICATE OF SERVICE .............................................................................................. 21

i

# TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

*Faulkner v. State,*
   No. W2012-00612-CCA-R-3-PD, 2014 WL 4267460 (Tenn. Ct. App. Aug. 29, 2014)........... 10

*Atkins v. Virgina,*
   536 U.S. 304 (2002) ................................................................................................... *passim*

*Baird v. Davis,*
   388 F.3d 1110 (7th Cir. 2004)................................................................................................ 9

*Brown v. Caraway,*
   719 F.3d 583 (7th Cir. 2013).............................................................................................. 14

*Bruce v. Warden, Lewisburg USP,*
   868 F.3d 170 (3d Cir. 2017).............................................................................................. 16

*Davis v. United States,*
   417 U.S. 333 (1974) .......................................................................................................... 11

*Descamps v. United States,*
   570 U.S. 254 (2013) ............................................................................................................ 4

*Ford v. Wainright,*
   447 U.S.  (1986) ............................................................................................................. *passim*

*Garza v. Lappin,*
   253 F.3d 918 (7th Cir. 2001).............................................................................. 13, 14, 15, 17

*Hall v. Florida,*
   572 U.S. 701 (2014) ............................................................................................................ 2

*Holmes v. Neal,*
   816 F.3d 949 (7th Cir. 2016)................................................................................................ 4

*In re Davenport,*
   147 F.3d 605 (7th Cir. 1998)................................................................................ 11, 14, 15-17

*Johnson v. United States,*
   135 S. Ct. 2551 (2015) ........................................................................................................ 4

*Lawrence v. State*,
969 So.2d 294 (Fla. 2007) .................................................................. 9

*Madison v. Alabama*,
139 S. Ct. 718 (2019) ............................................................... *passim*

*Mathis v. United States*,
136 S. Ct. 2243 (2016) ......................................................................... 4

*May v. Stephens*,
757 F.3d 211 (5th Cir. 2014) ............................................................... 9

*Montgomery v. Louisiana*,
136 S. Ct. 718 (2016) ........................................................................ 15

*Moore v. Texas*,
137 S. Ct. 1039 (2017) .................................................................. 2, 18

*Moore v. Texas*,
139 S. Ct. 666 (2019) .......................................................................... 2

*Panetti v. Quarterman*,
551 U.S. 930 (2007) ................................................................. *passim*

*Poe v. LaRiva*,
834 F.3d 770 (7th Cir. 2016) ........................................................ 11, 16

*Roper v. Simmons*,
543 U.S. 551 (2005) ............................................................................ 8

*Sessions v. Dimaya*,
138 S. Ct. 1204 (2018) ........................................................................ 4

*Shoop v. Hill*,
139 S. Ct. 504 (2019) .......................................................................... 2

*Smith v. Davis*,
927 F.3d 313 (5th Cir. 2019) ............................................................... 9

*Soliz v. State*,
432 S.W.3d 895 (Tex. Crim. App. 2014) ............................................ 10

*State v. Jenkins*,
--- N.W.2d ----, 303 Neb. 676 (2019) .................................................. 9

*Stewart v. Martinez-Villareal*,
523 U.S. 637 (1998) ................................................................................ 4, 18

*Stewart v. United States*,
646 F.3d 856 (11th Cir. 2011) ................................................................ 12

*Suggs v. United States*,
705 F.3d 279 (7th Cir. 2013) .................................................................. 18

*Taylor v. Gilkey*,
314 F.3d 832 (7th Cir. 2002) .................................................................. 13

*Teague v. Lane*,
489 U.S. 288 (1989) ............................................................................ 14, 15

*Trop v. Dulles*,
356 U.S. 86 (1958) ..................................................................................... 8

*Tyler v. Cain*,
533 U.S. 656 (2001) ................................................................................. 12

*United States v. Davis*,
139 S. Ct. 2319 (2019) ............................................................................... 4

*United States v. Fell*,
No. 5:01-cr-12-01, 2016 WL 11550800 (D. Vt. Nov. 7, 2016) ............... 10

*United States v. Hayman*,
342 U.S. 205 (1952) ................................................................................. 11

*Van Daalwyk v. United States*,
21 F.3d 179 (7th Cir. 1994) ..................................................................... 14

*Webster v. Daniels*,
784 F.3d 1123 (7th Cir. 2015) ................................................. 11, 12, 14, 16

## STATUTES

28 U.S.C. § 2241 ................................................................. 1, 10, 11, 13, 14, 18, 19
28 U.S.C. § 2255 ............................................................................. 11, 12, 13, 19
28 U.S.C. § 2255(a) ........................................................................................ 11
28 U.S.C. § 2255(e) ..................................................................................... 2, 11
28 U.S.C. § 2255(h) ............................................................................... 1, 12, 19

Fulks asks this Court to recognize a new category of defendants ineligible for the death penalty and a new class of petitions cognizable under 28 U.S.C. § 2241. He asks the Court to be the first to hold that a prisoner can be deemed "functionally" intellectually disabled and therefore constitutionally ineligible to be executed, "regardless of whether he meets all of the *Atkins* [*v. Virgina*, 536 U.S. 304 (2002),] criteria . . . ." Dkt. 67 at 10. He then asks the Court to be the first to hold that any case presenting constitutional ineligibility for execution may be brought pursuant to § 2241 if 28 U.S.C. § 2255(h) bars a second or successive § 2255 motion. This Court should reject both invitations.

Fulks' claim that he is ineligible for the death penalty based on his alleged intellectual and adapting functioning deficits fails for four reasons.[1] First, his claim that his intellectual and adaptive functioning deficits "bring him under the *Atkins* categorical exclusion—whether or not the cognitive deficits manifested before age 18," Dkt. 67 at 10, directly contradicts Supreme Court precedent established by *Atkins* and its progeny. Second, his functional intellectual disability claim is, in fact, derived from the *Ford v. Wainright*, 447 U.S. 399 (1986), line of cases, and it must be dismissed because it is not ripe. Third, Fulks' characterization of *Madison v. Alabama*, 139 S.Ct. 718 (2019), as having created a new "functional approach" to determining the constitutionality of the death penalty that renders ineligible those who are functionally comparable to the intellectually

---

[1] Fulks also argues that his alleged Fetal Alcohol Spectrum Disorder (FASD) renders him ineligible for execution because it is "comparable in severity to intellectual disability in its effects on lifelong adaptive functioning." Dkt. 67 at 10. Because Fulks argues his alleged FASD and his alleged intellectual and adaptive functioning deficits both "reduce his culpability in precisely the same way as the deficits of those who have received formal diagnoses of intellectual disability" and therefore "render him categorically ineligible for death for the same reasons that moved the Supreme Court in *Atkins*," *see* Dkt. 67 at 10-11, Respondent refers to these two claims jointly throughout this brief as the "functional intellectual disability claim."

1

disabled is unsupported by the law. Finally, this Court is without jurisdiction to consider the claim because it does not satisfy the 28 U.S.C. § 2255(e) savings clause and therefore cannot proceed under § 2241.

**I. THIS COURT SHOULD DENY FULKS' CLAIM THAT HE IS INELIGIBLE FOR THE DEATH PENALTY BASED ON HIS INTELLECTUAL AND ADAPTIVE FUNCTIONING DEFICITS BECAUSE IT RUNS AFOUL OF THE PRECEDENT ESTABLISHED BY *ATKINS* AND ITS PROGENY.**

The Supreme Court held in *Atkins* that execution of the mentally retarded constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Atkins*, 536 U.S. at 321. *Atkins* adopted the three-prong test set forth in the clinical definition of intellectual disability: (1) deficits in intellectual functioning, (2) deficits in adaptive functioning, and (3) onset of these deficits before the age of 18. *Id.* at 318. Since *Atkins*, the Supreme Court has instructed lower courts to "consult the medical community's opinions" in determining who qualifies as intellectually disabled, and it has invalidated state laws that imposed strict IQ cutoffs for intellectual disability. *See Moore v. Texas* (*Moore I*), 137 S. Ct. 1039 (2017); *Hall v. Florida*, 572 U.S. 701, 710 (2014). But it has consistently confirmed that the three-pong test announced in *Atkins* is used to determine whether a defendant is intellectually disabled and thus ineligible for execution. *See Moore v. Texas*, 139 S. Ct. 666, 668 (2019) (*Moore II*); *Shoop v. Hill*, 139 S. Ct. 504, 507 (2019); *Moore I*, 137 S. Ct. at 1045; *Hall*, 572 U.S. at 710. The Supreme Court has never held—or even implied—that a defendant can be "functionally" intellectually disabled and therefore constitutionally ineligible for the death penalty by satisfying just two of *Atkins*' three requirements.

Fulks' claim that he is constitutionally ineligible for the death penalty only because of his intellectual and adaptive functioning deficits—without establishing onset of these deficits before the age of 18—asks this Court to disregard extensive Supreme Court precedent requiring prisoners

2

to satisfy all three prongs of the intellectual disability test to establish ineligibility for execution. This claim should be denied.

**II.    THIS COURT SHOULD DENY FULKS' REQUEST THAT IT "EXPAN[D] *ATKINS* PURSUANT TO *MADISON*" BECAUSE SUCH AN APPROACH FINDS NO SUPPORT IN THE LAW.**

Implicitly acknowledging that *Atkins* precludes his functional intellectual disability claim, Fulks argues that "this Court must use *Madison*'s functional approach to determining whether he is ineligible for death under *Atkins*." Dkt. 67 at 11. But *Madison* did not open the door to Fulks' claim. Fulks' claim must be dismissed because, whether or not it is grounded in the *Ford* line of cases, it does not become ripe until execution is imminent. Additionally, there is no support in the law for his claim that *Madison* created a new "functional approach" for determining whether an individual is categorically ineligible for the death penalty.

**A.    Fulks' functional intellectual disability claim is, in fact, derived from the *Ford* line of cases, and it must be dismissed because it is not yet ripe.**

It is inescapable that *Madison*'s holding is based on *Ford* and its progeny. In *Ford*, the Supreme Court held that "the Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane." 477 U.S. at 409-10. In *Panetti v. Quarterman*, 551 U.S. 930, 959 (2007), the Court determined, based on *Ford*, that the Eighth Amendment "prohibits the execution of a prisoner whose mental illness prevents him from rationally understanding why the State seeks to impose that punishment." *Madison*, 139 S. Ct. at 722 (*quoting Panetti*, 551 U.S. at 959) (internal quotation marks and alteration omitted). And in *Madison*, the Supreme Court held that the test for determining competency to be executed is that enunciated in *Panetti*: "whether a prisoner's concept of reality is so impaired that he cannot grasp the execution's meaning and

3

purpose or the link between his crime and its punishment." *Madison*, 139 S. Ct. at 723 (*quoting Panetti*, 551 U.S. at 958, 960) (internal alteration and quotation marks omitted).

*Madison* could not be more clearly derived from *Ford* and *Panetti*. The first line of *Madison* cites to *Panetti* for the proposition that the Eighth Amendment "prohibits the execution of a prisoner whose mental illness prevents him from 'rationally understanding' why the State seeks to impose that punishment." 139 S. Ct. at 722 (*quoting Panetti*, 551 U.S. at 959) (internal alteration omitted). The first line of its analysis section explains that the Supreme Court "decided in *Ford v. Wainwright* that the Eighth Amendment's ban on cruel and unusual punishments precludes executing a prisoner who has 'lost his sanity' after sentencing." *Id*. (internal citation omitted). And both of its holdings are based on the defendant's ability or inability to understand why the State seeks to execute him. *See id.* at 727, 728-29; *infra* pp. 6-7.

Fulks asserts that Respondent has "take[n] aim at a non-existent *Ford* target" in the Return. Dkt. 67 at 11. But he cannot credibly argue that a true *Madison* claim is not derived from *Ford* and *Panetti* simply because it is based on the newest case in a line of precedent. A claim based on *Mathis v. United States*, 136 S. Ct. 2243 (2016), is a claim derived from *Descamps v. United States*, 570 U.S. 254 (2013). A claim based on *United States v. Davis*, 139 S. Ct. 2319 (2019), is a claim derived from *Johnson v. United States*, 135 S. Ct. 2551 (2015), and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). And a claim based on *Madison* is derived from *Ford* and *Panetti*, no matter what the petitioner chooses to call said claim. Because *Madison* claims are grounded in *Ford*, they are not ripe until the defendant's execution is imminent. *See Stewart v. Martinez-Villareal*, 523 U.S. 637, 643-45 (1998); *Holmes v. Neal*, 816 F.3d 949, 954 (7th Cir. 2016); Dkt. 66 at 34-37.

4

To the extent Fulks' functional intellectual disability claim is not derived from *Ford* and *Panetti*, it is only because it is not actually based on *Madison*. *See infra* pp. 6-8. Accepting, however, his argument that the claim is not based on the *Ford* line of cases, the rationale dictating that a *Ford* claim is not ripe until execution is imminent would still apply. The key question is whether Fulks is competent to be executed; that issue is not ripe to be resolved by a court until execution is impending. Because incompetence to be executed is not necessarily a permanent condition, ruling on the question before execution is imminent does not settle the issue and wastes judicial resources. Fulks' status may change in the future, and a finding with regard to the instant petition would not bar either party from questioning his competency (or incompetency) again closer to his date of execution. *See Panetti*, 551 U.S. at 934 ("Prior findings of competency do not foreclose a prisoner from proving he is incompetent to be executed because of his present mental condition."); *see also Ford*, 477 U.S. at 429 (O'Connor, J., concurring in the result in part and dissenting in part) ("Regardless of the number of prior adjudications of the issue, until the very moment of execution the prisoner can claim that he has become insane sometime after the previous determination to the contrary."). Allowing Fulks to raise his functional intellectual disability claim before his execution becomes imminent could open the door to significant, unnecessary future litigation. It would "not conserve judicial resources, reduce piecemeal litigation, or streamline federal habeas proceedings." *See Panetti*, 551 U.S. at 946 (internal quotation marks and alterations omitted). Whether he calls his functional intellectual disability claim a *Ford* claim or not, it is not ripe until his execution is imminent. Accordingly, this Court is without jurisdiction to consider the claim, and it must be dismissed.

5

**B. This Court should reject Fulks' unsupported claim that *Madison* created a new "functional approach" to determining death penalty eligibility that renders ineligible those who are functionally comparable to the intellectually disabled.**

Fulks urges this Court to be the first to extract from *Madison* a new "functional approach" to determining eligibility for execution under which he is no longer required to satisfy all three *Atkins* criteria for intellectual disability, so long as he is determined to be functionally indistinguishable from an intellectually disabled person. But Fulks fails to point the Court to a single case, including *Madison* itself, that supports this approach.

Although he argues *Madison* is the new legal development that allows him to bring his second claim, Fulks explicitly denounces any claim that "he lacks a rational understanding of his situation." Dkt. 67 at 11. He does not ask this Court to apply the rationale of *Madison* to his case. Instead, he asks the Court to apply the rationale underlying *Atkins*—that the intellectually disabled have diminished culpability—to the "functional approach" he claims was adopted in *Madison* in order to escape the fact that he cannot satisfy the requirements of *Atkins*' intellectual disability test. Fulks asserts that "*Madison* establishes that the Eighth Amendment requires a reviewing court to apply the respective criteria [for the 'several areas of categorical exclusion from death-eligibility'] functionally, by asking whether the defendant's impairments satisfy them, regardless of diagnostic label." Dkt. 67 at 12. This claim is wholly unsupported by the law.

In *Madison*, the Supreme Court began its analysis by reciting the reasons for the time-honored bar on executing an insane prisoner that led to *Ford*'s holding: "a moral intuition that killing one who has no capacity to understand his crime or punishment simply offends humanity," and "the lack of retributive value in executing a person who has no comprehension of the meaning of the community's judgment." 139 S. Ct. at 722-23 (*quoting Ford*, 477 U.S. at 407, 421) (internal

6

quotation marks omitted). As *Madison* explained, the Supreme Court in *Panetti* "clarified the scope" of the category of defendants defined by their mental state as being incompetent to be executed "by focusing on whether a prisoner can reach a rational understanding of the reason for his execution." 139 S. Ct. at 723 (*quoting Panetti*, 551 U.S. at 958) (internal quotation marks and alteration omitted). *Madison* set forth *Panetti*'s test for determining whether an individual is incompetent to be executed under *Ford*: "the issue is whether a prisoner's concept of reality is so impaired that he cannot grasp the execution's meaning and purpose or the link between his crime and its punishment." 139 S. Ct. at 723 (*quoting Panetti*, 551 U.S. at 958) (internal quotation marks and alteration omitted).

*Madison* first held that the failure to remember committing a crime alone is not enough to prevent execution because, "under *Panetti*'s own terms," the loss of memory "does not prevent rational understanding of the State's reasons for resorting to punishment." *Id.* at 727. It then held that a mentally ill prisoner cannot be executed where he lacks the ability to rationally understand his punishment, "irrespective of whether one disease or another (say, psychotic delusions or dementia) is to blame." *Id*. at 728-29. The only "functional" test endorsed by *Madison* was derived from *Ford* and *Panetti*: whether a defendant's mental illness renders him incapable of understanding the State's rationale for his punishment.

Fulks does not cite to a single sentence in the *Madison* opinion that supports his characterization of its holding. He asks this Court to expand *Madison* into territory that was nowhere contemplated in the opinion. The word "functional" did not appear once in *Madison*, and the only pincites Fulks has provided to the case in his Amended Petition and Reply are to procedural history and background information. The Supreme Court did not exempt from the

death penalty an entirely new class of defendants—"those functionally comparable to the intellectually disabled," *see* Dkt. 67 at 16—*sub silentio*. Allowing a defendant to establish ineligibility for execution based only on his adaptive and intellectual functioning deficits would render *Atkins* a nullity. What defendant would seek to establish the three criteria for intellectual disability when he could simply meet two of them and reach the same result? It strains credulity that the Supreme Court would make such a sweeping change to death penalty jurisprudence only by implication. This Court should reject Fulks' claim that *Madison* created a new "functional approach" to determining death penalty eligibility that bars his execution based on his alleged functional intellectual disability.

Moreover, the national consensus required by *Atkins* to create a categorical exemption from the death penalty does not exist with respect to those who are "functionally equivalent" to the intellectually disabled. In *Atkins*, the Supreme Court explained that the Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." 546 U.S. at 311-12 (*quoting Trop v. Dulles*, 356 U.S. 86, 100-01 (1958)). The Court thus judges claims that a punishment is unconstitutionally excessive by looking to "objective indicia of society's standards, as expressed in legislative enactment and state practice," as well as the Court's own judgment. *Roper v. Simmons*, 543 U.S. 551, 563 (2005). Fulks' claim that "he is categorically ineligible for the death penalty regardless of whether he satisfies all the criteria for intellectual disability," Dkt. 67 at 10, fails because he provides no evidence of a national consensus carving out an exemption from the death penalty for those who are functionally intellectually disabled.

He has cited no state or federal legislation banning execution of the functionally intellectually disabled, nor has he cited to one state or federal court creating such a categorical exemption from the death penalty. Federal and state courts have consistently declined to extend *Atkins*' bar on execution beyond the intellectually disabled. *See*, *e.g.*, *May v. Stephens*, 757 F.3d 211, 219 (5th Cir. 2014) (holding neither *Roper* nor *Atkins* created a new rule of constitutional law making execution of mentally ill persons unconstitutional); *Baird v. Davis*, 388 F.3d 1110, 1114 (7th Cir. 2004) (recognizing Supreme Court's exemptions from execution for the mentally ill and minors, but that it has "not yet ruled out the execution of persons who kill under an irresistible impulse"); *Lawrence v. State*, 969 So.2d 294, 300 n.9 (Fla. 2007).

Federal and state courts have also declined to extend *Madison*'s bar on execution beyond those who do not have a rational understanding of the reasons the State seeks to execute them. *See Smith v. Davis*, 927 F.3d 313 (5th Cir. 2019) (rejecting, post-*Madison*, defendant's claim "that those who are severely mentally ill are similar to the intellectually disabled and juvenile offenders and therefore the severely mentally ill lack the moral culpability to permit a sentence of death" and noting that defendant "does not contend that his concept of reality is so impaired that he cannot grasp the execution's meaning and purpose or the link between his crime and punishment") (internal quotation marks and alteration omitted); *State v. Jenkins*, --- N.W.2d ----, 303 Neb. 676 (2019) ("Neither the U.S. Supreme Court nor the Nebraska Legislature has explicitly precluded the death penalty for an individual with a severe mental illness. Rather, the Supreme Court has held that the Eighth Amendment forbids executing a prisoner whose mental illness makes him or her unable to 'reach a rational understanding of his or her execution.' . . . "[W]hat matters is

9

whether a prisoner has a rational understanding of why he or she is to be executed.") (*citing Panetti*, 551 U.S. at 958; *Madison*, 139 S. Ct. at 718) (internal alteration omitted).

And federal and state courts have declined to categorically exempt individuals with FASD from the death penalty. *See*, *e.g.*, *United States v. Fell*, No. 5:01-cr-12-01, 2016 WL 11550800, at *7 (D. Vt. Nov. 7, 2016) (according "great weight" to lack of national consensus on whether death penalty is disproportionate punishment for defendants with FASD); *Soliz v. State*, 432 S.W.3d 895, 903 (Tex. Crim. App. 2014) (holding three states with programs to identify and assist juvenile offenders with FASD "does not demonstrate an emerging national consensus in favor of barring the execution of adult offenders convicted of capital murder who are not mentally retarded but who have permanent brain damage resulting from partial fetal alcohol syndrome"); *Faulkner v. State*, No. W2012-00612-CCA-R3-PD, 2014 WL 4267460 (Tenn. Ct. App. Aug. 29, 2014) (unpublished) (denying claim that petitioner's FASD is functional equivalent of intellectual disability and explaining "no national consensus in the state legislation supporting a categorical exclusion for the mentally ill or cognitively impaired exists" and "federal and state courts have consistently declined to extend the United States Supreme Court's ruling in *Atkins* . . . to the mentally ill"). In short, Fulks has provided this Court with no objective evidence that evolving standards of decency dictate a categorical exemption from the death penalty for defendants who are functionally equivalent to the intellectually disabled.[2]

---

[2] As explained in the Return, Dkt. 66 at 45 n.14, Respondent has moved to dismiss Fulks' § 2241 petition as a matter of law. For this reason, Respondent has not addressed the numerous factual assertions made by Fulks in his § 2241 petition. Because Fulks' petition should be dismissed, there is no need for oral argument or an evidentiary hearing; the Court can dismiss Fulks' § 2241 petition based on the papers filed without any argument. To the extent the Court does not agree, however, Respondent again denies Fulks' allegations, including those that assert that he is intellectually disabled or functionally intellectually disabled and not competent to be

**III. THIS COURT SHOULD DISMISS FULKS' FUNCTIONAL INTELLECTUAL DISABILITY CLAIM BECAUSE IT DOES NOT SATISFY THE § 2255(e) SAVINGS CLAUSE AND THEREFORE CANNOT PROCEED UNDER § 2241.**

Congress enacted 28 U.S.C. § 2255(a) in 1948 to divert federal prisoner attacks on their convictions and sentences from the district of confinement, where traditional habeas petitions are litigated, to the "'more convenient' jurisdiction of the sentencing court," *United States v. Hayman*, 342 U.S. 205, 219 (1952), while still "afford[ing] federal prisoners a remedy identical in scope to federal habeas corpus," *Davis v. United States*, 417 U.S. 333, 343 (1974). Under the plain language of § 2255, a federal prisoner wishing to argue that his "sentence was imposed in violation of the Constitution or laws of the United States" must bring a § 2255 motion before "the court which imposed the sentence . . . ." 28 U.S.C. § 2255(a).

The 1948 legislation also included the savings clause now found in § 2255(e), an exclusivity provision stating that district courts "shall not" entertain a federal prisoner's application for a writ of habeas corpus under § 2241 "unless it also appears that the remedy by motion [under § 2255] is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). The Seventh Circuit has long held that to pass through the savings clause and proceed under § 2241, there must be a "structural problem" with § 2255 "that forecloses even one round of effective collateral review." *Poe v. LaRiva*, 834 F.3d 770, 772 (7th Cir. 2016) (internal quotation marks and alteration omitted); *see also Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015) (en banc); *In re Davenport*, 147 F.3d 605, 610-11 (7th Cir. 1998). "In other words, something

---

executed. Additionally, should this Court not dismiss Fulks' petition, Respondent requests an extension of time in which to conduct discovery, including depositions, expert examinations, and other appropriate discovery necessary to respond to Fulks' substantive claims prior to any evidentiary hearing.

more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied." *Webster*, 784 F.3d at 1136.

Through the 1996 enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA), Congress sought to enhance the finality of criminal judgments by "dramatically limit[ing] successive attempts at [post-conviction] relief." *Stewart v. United States*, 646 F.3d 856, 859 (11th Cir. 2011); *see also Tyler v. Cain*, 533 U.S. 656, 661 (2001). To that end, the law now prohibits a defendant from filing a "second or successive" collateral attack on a conviction or sentence without the appellate court's permission for the district court to consider the application. 28 U.S.C. § 2255(h). The second or successive application must contain (1) persuasive new evidence of the defendant's innocence of the crime; or (2) a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review. 28 U.S.C. § 2255(h).

Fulks' functional intellectual disability claim must be dismissed for lack of jurisdiction because he cannot establish that § 2255 is inadequate or ineffective to test the legality of his detention. First, there is no structural problem in § 2255 foreclosing collateral review of his claim, and the claim does not fall within the narrow paths for § 2241 relief established by the Seventh Circuit. Second, Fulks' claim is cognizable in a second or successive § 2255 motion in the District of South Carolina.

**A.      Fulks' claim does not fall within the narrow paths for § 2241 relief established by the Seventh Circuit.**

Accepting for purposes of argument Fulks' contention that his functional intellectual disability claim is not derived from the *Ford* line of cases, it is still clear that his challenge to his death sentence is rooted in the Eighth Amendment to the Constitution. *See* Dkt. 67 at 12 ("*Madison* establishes that the Eighth Amendment requires a reviewing court to apply the respective criteria

12

functionally, by asking whether the defendant's impairments satisfy them, regardless of diagnostic label."). And the text of § 2255(a) plainly states that a federal prisoner raising a constitutional challenge to his sentence must bring his motion in "the court which imposed the sentence." A § 2255 motion is therefore the appropriate vehicle for Fulks' Eighth Amendment claim. He has made no argument to the contrary.

Instead, Fulks argues that he can pass through the savings clause and proceed under § 2241 "because a 'structural problem' prevents him from filing a *second* § 2255 motion . . . ." Dkt. 67 at 13 (emphasis added). This argument is without merit. Under Fulks' preferred rule, a defendant arguing he is constitutionally ineligible for the death penalty can either proceed with a second § 2255, or he can proceed under § 2241. But no court has ever held that a defendant can proceed under § 2241 *any time* there is a barrier to § 2255 relief.[3] The Seventh Circuit has rejected Fulks' framework and plainly established that § 2241's remedy does not become available simply because a defendant cannot meet the requirements for filing a successive § 2255 motion. *See Taylor v. Gilkey*, 314 F.3d 832, 836 (7th Cir. 2002); Dkt. 66 at 24-26.

Fulks contends that a "variety of situations may satisfy the savings clause." Dkt. 67 at 12. In reality, the Seventh Circuit has set forth very narrow circumstances in which a case may satisfy the savings clause and proceed under § 2241.[4] In *Davenport*, the Seventh Circuit held that a § 2241

---

[3] Moreover, Fulks has not cited to any case where a court has allowed § 2241 relief based on a constitutional rule, nor is Respondent aware of one. To the extent Fulks attempts to rely on *Garza v. Lappin*, 253 F.3d 918, 923 (7th Cir. 2001), and *Webster* to establish that the Seventh Circuit permits constitutional challenges to the death penalty to proceed under § 2241, such a claim must fail for the reasons discussed below, *infra* p. 15-16.

[4] Respondent disputes Fulks' inaccurate claim that "in response to Claim II [Respondent] insists that a petitioner can satisfy the savings clause only with a claim involving statutory interpretation." *See* Dkt. 67 at 13. Respondent noted at the outset of the savings clause analysis

claim can proceed where (1) the petitioner relies on a "statutory-interpretation case," rather than a "constitutional case;" (2) he relies on a retroactive decision that he could not have invoked in his first § 2255 motion; and (3) there is a grave enough error to be deemed a miscarriage of justice. *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013). In *Garza v. Lappin*, 253 F.3d 918, 923 (7th Cir. 2001), the court allowed a § 2241 petition based on a new treaty decision by an international court where § 2255 had *never* "provided an adequate avenue" for testing his challenge. And in *Webster*, the court held that a § 2241 claim based on newly discovered evidence could proceed where (1) the evidence existed at the time of the original proceedings; (2) the evidence was unavailable at the time of trial despite diligent efforts to obtain it; and (3) the evidence shows that the petitioner is constitutionally ineligible for the penalty he received. *Webster*, 784 F.3d at 1140 n.9. Fulks' claim cannot pass through the savings clause under any of these exceptions.

Fulks' § 2241 claim cannot proceed under *Davenport*. He cannot satisfy *Davenport*'s first requirement because his functional intellectual disability claim is, he asserts, based on *Madison*, a constitutional interpretation case. *See Brown*, 719 F.3d at 586. Nor can Fulks meet the second *Davenport* requirement because, to the extent Fulks' proposed "functional analysis" of death penalty eligibility is derived from *Madison*, his claim does not rely on a new, retroactive rule.[5]

---

for Fulks' second claim that Fulks had made no argument that he satisfies the three-part test set forth in *Webster* for determining when a claim of newly discovered evidence can satisfy the § 2255 savings clause, and that *Webster* does not open the door to Fulks' claim because Fulks does not rely on new evidence. Dkt. 66 at 38 n.11. Respondent has never contended that published Seventh Circuit precedent applies to one claim but not the other.

[5] Fulks argues that "it is not clear that *Teague* [*v. Lane*, 489 U.S. 288 (1989),] applies to federal collateral review of a federal sentence." Dkt. 67 at 14. However, the Seventh Circuit has squarely held that the retroactivity principles articulated in *Teague* are applicable to collateral challenges to federal convictions. *Van Daalwyk v. United States*, 21 F.3d 179, 180 (7th Cir. 1994).

Under *Teague v. Lane*, 489 U.S. 288 (1989), "a case announces a new rule when it breaks new ground or imposes a new obligation on the State or the Federal Government," or when "the result was not *dictated* by precedent existing at the time the defendant's conviction became final." 489 U.S. at 301 (emphasis in original). Fulks asserts that the "key question" under *Teague* is "not whether *Madison* announced a new rule, but whether it announced a new substantive rule or a new rule of criminal procedure." Dkt. 67 at 14. But a condition precedent to either alternative Fulks proposes is that the rule announced in *Madison* is, in fact, new. Respondent maintains it is not.[6] *See* Dkt. 66 at 41. *Madison*'s holding was dictated by *Panetti*. *See Madison*, 139 S. Ct. at 726, 728 (explaining the question of whether *Panetti* permits the execution of a prisoner "merely because he suffers from dementia, rather than psychotic delusions," was "already answered" by *Panetti*). Because Fulks cannot satisfy at least the first two *Davenport* prongs, his § 2241 claim cannot pass through the savings clause.

His claim fares no better under *Garza* and *Webster*. The Seventh Circuit allowed Garza's claim to proceed under § 2241 only because § 2255 "does not now and never has provided an adequate avenue for testing Garza's present challenge to the legality of his sentence." *Garza*, 253 F.3d at 923. Fulks' case is distinguishable because, as set forth above, *supra* p. 12-13, § 2255

---

[6] Additionally, as explained above, *supra* pp. 6-8, the rule Fulks asks this Court to adopt – that "*Madison* establishes that the Eighth Amendment requires a reviewing court to apply the respective criteria [for the 'several areas of categorical exclusion from death-eligibility'] functionally, by asking whether the defendant's impairments satisfy them, regardless of diagnostic label," Dkt. 67 at 12 – is not derived from *Madison* at all.

For this reason, *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), is inapposite to Fulks' claim. Although *Madison* confirmed *Panetti*'s holding that the death penalty is unconstitutional for a class of defendants who cannot form a rational understanding of why the State seeks to execute them, *Madison* did not recognize as ineligible for execution all defendants who are functionally equivalent to the intellectually disabled.

provides an avenue for his Eighth Amendment claim. The Seventh Circuit allowed Webster's claim to proceed under § 2241 because he presented new evidence that showed he was constitutionally ineligible for the death penalty. *Webster*, 784 F.3d at 1139. Again, Fulks' case is distinguishable; he does not rely on any new evidence to show he is ineligible for the death penalty.[7] Fulks urges the Court to read *Webster* broadly, contending it holds that "the narrow set of cases presenting issues of constitutional ineligibility for execution is another lacuna in the § 2255 statute," warranting relief under § 2241. *See* Dkt. 67 at 13 (*quoting Webster*, 784 F.3d at 1138) (internal alteration omitted). But the Seventh Circuit has already determined that "there is nothing in *Webster* to suggest that its holding applies outside the context of new evidence." *Poe*, 834 F.3d at 774. The narrow avenues to § 2241 relief set forth in *Davenport*, *Garza*, and *Webster* do not allow Fulks' functional intellectual disability claim to pass through the savings clause.

Fulks asks this Court to view Seventh Circuit precedent as liberally permitting claims barred by § 2255(h) to pass through the savings clause. He cites to the Third Circuit's decision in *Bruce v. Warden, Lewisburg USP*, 868 F.3d 170, 181 (3d Cir. 2017), to support his proposition that "when the timing of a petitioner's litigation deprives him or her of a fair opportunity to advance a claim relying on a new substantive rule under § 2255, the petitioner may sometimes proceed under § 2241." Dkt. 67 at 13. *Bruce* is of no help to Fulks. It does not hold that any petitioner whose claim is too late to be brought under § 2255 may find relief in § 2241, and it is readily distinguishable because the claim was based on a statutory-interpretation case. 868 F.3d

---

[7] Fulks states that a successive § 2255 motion is unavailable to him "because the new evidence on which he relies does not establish his factual innocence." Dkt. 67 at 12. But, as best as Respondent can tell, his functional intellectual disability claim relies only on a new legal basis. *See* Dkt. 55 at 57, ¶ 150; 68, ¶ 177.

at 181. If Fulks were also relying on a statutory-interpretation case, rather than a constitutional case, he would satisfy the first prong of *Davenport*'s test for determining whether he, like Bruce, could proceed under § 2241. Taken to its logical conclusion, the holding Fulks asks this Court to adopt—that he can proceed under § 2241 because he cannot file a second § 2255 motion—would render § 2255(h) a nullity. The Seventh Circuit has rejected this approach. *See Garza*, 253 F.3d at 921 ("The mere fact that Garza's petition would be barred as successive under § 2255, however, is not enough to bring the petition under § 2255's savings clause; otherwise, the careful structure Congress has created to avoid repetitive filings would mean little or nothing."). The integrity of the AEDPA regime depends on keeping these exceptions as tightly cabined as the Seventh Circuit intended them to be, rather than expanding them to cover claims, like Fulks', that Congress has intended be addressed through § 2255.

The wisdom in Congress' approach is demonstrated by the dueling litigation Fulks currently has pending in this District and in the District of South Carolina. As noted in the Return, Dkt. 66 at 24 n.7, Fulks has already received permission from the Fourth Circuit to file a successive § 2255 motion, *In re Fulks*, No. 16-9, Dkt. 19, and the successive motion is currently pending in the District of South Carolina, *United States v. Fulks*, 4:02-cr-00992 (D.S.C.), Dkt. 1618. On August 2, 2019, Fulks filed a *pro se* motion in the District of South Carolina for a satellite video conference, stating that "there is no reason that [he] cannot be executed now that federal executions have resumed." *Id.*, Dkt. 1656 at 3 (Attached hereto as Exhibit One). Fulks' constitutional challenge to his death sentence should be litigated where Congress intended, in the district of his conviction along with his other challenges to his sentence.

17

Fulks' functional intellectual disability claim is rooted in the Eighth Amendment. It is a constitutional claim properly addressed through § 2255. Fulks therefore cannot show that § 2255 is inadequate or ineffective, and his § 2241 petition should be dismissed for lack of jurisdiction.

**B.      Fulks' claim is cognizable in a second-in-time § 2255 motion.**

Finally, in addition to being legally incorrect, Fulks' contention that his claim may proceed under § 2241 because a second § 2255 motion is not available to him is factually inaccurate. Fulks' functional intellectual disability claim is, in fact, cognizable in a second § 2255 motion. As discussed above, *supra* pp. 3-5, Fulks' claim will not ripen until his execution is imminent. And a second § 2255 motion filed once a challenge to the death penalty becomes ripe is not "second or successive" under the AEDPA. *See Suggs v. United States*, 705 F.3d 279, 282 (7th Cir. 2013); *see also Martinez-Villareal*, 523 U.S. at 644-45; Dkt. 66 at 39-40. Thus, even if the bar on successive § 2255 motions were a structural error opening the door to a § 2241 remedy, it would be irrelevant here because Fulks' claim may be brought in a second-in-time § 2255 motion in the District of South Carolina.[8] This Court is without jurisdiction to consider Fulks' Eighth Amendment claim under § 2241 because the claim is cognizable in a second or successive § 2255 motion.

---

[8] Notably, Fulks wholly failed to address Respondent's contention that the District of South Carolina is the appropriate venue for resolution of his Eighth Amendment claim.

Fulks' only mention of the District of South Carolina is to note that there is no reason to believe he had a viable *Atkins* claim before *Moore I* because, Fulks believes, "the district court that presided over his sentencing and § 2255 proceedings rejected an *Atkins* claim raised by his co-defendant based on an adaptive-deficits analysis at odds with then-current diagnostic standards." Dkt. 67 at 7; *see* Dkt. 55 at 52-53. But the potential, or even the likelihood, of receiving an unfavorable outcome on the merits of a claim is not the same as the foreclosure of the ability to bring the claim in the first place. It is the opportunity to *test* a claim that matters for purposes of the "inadequate or ineffective" analysis, not the opportunity to receive a favorable result.

18

## IV. CONCLUSION

Fulks' functional intellectual disability claim fails for four reasons. First, it directly contradicts Supreme Court precedent established by *Atkins* and its progeny. Second, it must be dismissed because it is not ripe. Third, Fulks' characterization of *Madison* as having created a new "functional approach" to determining the constitutionality of the death penalty that bars execution for those who are functionally intellectually disabled is unsupported by the law. Finally, this Court is without jurisdiction to consider the claim because it does not satisfy the savings clause and therefore cannot proceed under § 2241. Respondent respectfully requests that this Court reject Fulks' invitation to be the first to recognize a new class of prisoners deemed functionally ineligible for the death penalty and the first to hold that any case alleging constitutional ineligibility for execution may be brought pursuant to § 2241 if § 2255(h) bars a second or successive § 2255 motion.

Respectfully submitted,

JOSHUA J. MINKLER
UNITED STATES ATTORNEY

*/s/Joe Howard Vaughn*
Joe Howard Vaughn
Assistant United States Attorney
United States Attorney's Office
10 West Market Street, Suite 2100
Indianapolis, IN 46204
Tel. (317) 229-2447
Fax (317) 226-6125
Email: Joe.Vaughn@USDOJ.GOV

*and*

19

*/s/Robert Frank Daley, Jr.*
Robert Frank Daley, Jr.
Kathleen Michelle Stoughton
Special Assistant United States Attorneys
1441 Main Street, Suite 500
Columbia, SC 29201
Tel. (803) 929-3000
Fax (803) 929-3135
Email: Robert.Daley@USDOJ.GOV
Email: Kathleen.Stoughton@USDOJ.GOV

June 12, 2019                                   *Counsel for Respondent*

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| CHADRICK FULKS, | ) | No. 2:15-CV-00033-JRS-MJD |
| | ) | |
| Petitioner, | ) | |
| | ) | **CERTIFICATE OF SERVICE** |
| *versus* | ) | |
| | ) | |
| J.E. KRUEGER, | ) | |
| *Warden, Terre Haute USP*, | ) | |
| | ) | |
| Respondent. | ) | |

I hereby certify that on June 12, 2019, the foregoing document was served on all parties or

their counsel of record through the CM/ECF system if they are registered users or, if they are not,

by serving a true and correct copy at the address(es) listed below:

Claudia Van Wyk, Esquire
Peter Konrad Williams, Esquire
FEDERAL COMMUNITY DEFENDER OFFICE
601 Walnut Street, Suite 545W
Philadelphia, PA 19106
Email: Claudia_Vanwyk@fd.org
Email: Pete_Williams@fd.org

**[SIGNATURES FOLLOWING]**

Respectfully submitted,

JOSHUA J. MINKLER
UNITED STATES ATTORNEY

*/s/Joe Howard Vaughn*
Joe Howard Vaughn
Assistant United States Attorney
United States Attorney's Office
10 West Market Street, Suite 2100
Indianapolis, IN 46204
Tel. (317) 229-2447
Fax (317) 226-6125
Email:  Joe.Vaughn@USDOJ.GOV

*and*

*/s/Robert Frank Daley, Jr.*
Robert Frank Daley, Jr.
Kathleen Michelle Stoughton
Special Assistant United States Attorneys
1441 Main Street, Suite 500
Columbia, SC 29201
Tel. (803) 929-3000
Fax (803) 929-3135
Email: Robert.Daley@USDOJ.GOV
Email: Kathleen.Stoughton@USDOJ.GOV

*Counsel for Respondent*

June 12, 2019