**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| CHADRICK EVAN FULKS, | : | CIVIL ACTION |
| Petitioner, | : | (Capital Habeas Corpus) |
| v. | : | |
| T.J. WATSON, Complex Warden, | : | No. 2:15-cv-00033-JRS-MJD |
| USP Terre Haute, UNITED STATES | : | **Hon. James R. Sweeney, II** |
| OF AMERICA | : | **United States District Judge** |
| Respondents. | : | |

## NOTICE OF APPEAL

Notice is hereby given that Chadrick Evan Fulks, petitioner in the above-named case, hereby appeals to the United States Court of Appeals for the Seventh Circuit from each and every aspect of the final judgment and order denying his petition for a writ of habeas corpus, entered in this action on September 20, 2019 (Dkt. Nos. 73 and 74), and this Court's order denying Mr. Fulk's motion to alter or amend judgment, pursuant to Rule 59 of the Federal Rules of Civil Procedure, entered on April 1, 2020 (Dkt. No. 83). This Notice has been filed within 60 days of April 1, 2020. *See* F.R. App. P. 4(a)(1)(B)(i), 4(a)(4)(A)(iv).

Respectfully submitted,

/s/ Peter Williams
PETER WILLIAMS
CLAUDIA VAN WYK
Assistant Federal Defenders
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Tel: 215.928.0520
Fax: 215.928.0826
claudia_vanwyk@fd.org
pete_williams@fd.org

Dated: May 28, 2020

# CERTIFICATE OF SERVICE

I, Peter Williams, hereby certify that on this 28th day of May, 2020, a copy

of the forgoing was served via ECF filing on the following people:

Joe Howard Vaughn, Esquire
Assistant United States Attorney
Office of the United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204–3048

Robert Frank Daley, Jr.
Kathleen Michelle Stoughton
Special Assistant United States Attorneys
1441 Main Street, Suite 500
Columbia, SC 29201


/s/ Peter Williams
Peter Williams

| | | |
|---|---|---|
| CHADRICK FULKS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:15-cv-00033-JRS-MJD |
| | ) | |
| J. E. KRUEGER, | ) | |
| | ) | |
| Respondent. | ) | |

**Order Denying Petition for a Writ of Habeas Corpus**

Petitioner Chadrick Fulks is a federal prisoner incarcerated at the United States Penitentiary in Terre Haute, Indiana. He was convicted and sentenced to death in the United States District Court for the District of South Carolina. His convictions and sentence were affirmed on direct appeal, and his post-conviction motion under 28 U.S.C. § 2255 was denied.

Mr. Fulks now seeks a writ of habeas corpus from this Court pursuant to 28 U.S.C. § 2241. He presents two claims, both of which argue that he is categorically ineligible for the death penalty under the Eighth Amendment because he is intellectually disabled or functionally equivalent thereto. In support of his claims, Mr. Fulks presents extensive evidence that he has an intellectual disability,[1] has diminished cognitive functioning, and suffers from fetal alcohol spectrum disorder.

Ultimately, the Court cannot reach the merits of Mr. Fulks' claims because they are barred by 28 U.S.C. § 2255(e). Mr. Fulks cannot show that a structural problem with § 2255 prevented him from having a reasonable opportunity for a reliable judicial determination of these claims in his § 2255 proceedings. Accordingly, his claims must be dismissed with prejudice.

---

[1] The Court follows the Supreme Court's lead in using the term "intellectual disability" rather than the previously used term, "mental retardation." *See Hall v. Florida*, 572 U.S. 701, 704 (2014).

# I.
## Background

The facts underlying Mr. Fulks' criminal convictions are irrelevant to the legal issues presented in his habeas petition. They are set forth in detail in the opinion affirming Mr. Fulks' convictions and sentence on direct appeal. *See United States v. Fulks*, 454 F.3d 410 (4th Cir. 2006) ("*Fulks I*"). Relevant to Mr. Fulks' habeas petition is the procedural history of his other challenges to his convictions and sentence. This procedural history is set forth below.

Mr. Fulks and his co-defendant, Brandon Basham, were indicted in December 2002 in the United States District Court for the District of South Carolina. The Grand Jury returned a Superseding Indictment on April 23, 2003, charging Mr. Fulks and Mr. Basham with eight counts. In May 2004, Mr. Fulks pleaded guilty to all eight counts. Two of those charges—carjacking resulting in death, *see* 18 U.S.C. § 2119(3), and kidnapping resulting in death, *see* 18 U.S.C. § 1201—made Mr. Fulks eligible for the death penalty.

A jury unanimously recommended that Mr. Fulks be sentenced to death on both death-eligible counts. The sentencing court imposed the death sentence on both counts and sentenced Mr. Fulks to 744 months' imprisonment on the remaining six counts to run consecutively to the two death sentences. The United States Court of Appeals for the Fourth Circuit affirmed Mr. Fulks' convictions and sentence in *Fulks I*. The United States Supreme Court denied Mr. Fulks' petition for writ of certiorari on June 25, 2007. *See Fulks v. United States*, 551 U.S. 1147 (2007).

On June 23, 2008, Mr. Fulks filed a motion to vacate his convictions and sentence pursuant to 28 U.S.C. § 2255. Notably, Mr. Fulks did not raise a claim under *Atkins v. Virginia*, 536 U.S. 304 (2002), in his § 2255 motion. The District Court denied his motion, and, on June 26, 2012, the Fourth Circuit affirmed. *See United States v. Fulks*, 683 F.3d 512 (4th Cir. 2012) ("*Fulks II*").

The Supreme Court denied Mr. Fulks' petition for writ of certiorari on October 7, 2013. *See Fulks v. United States*, 571 U.S. 941 (2013).

On January 29, 2015, Mr. Fulks filed the instant habeas petition pro se. Approximately a year later, the Federal Community Defender Office from the Eastern District of Pennsylvania was appointed to represent Mr. Fulks in this action.[2] *See* Dkt. 22. After nearly three years of extending the deadline to file a reply brief, the Court granted Mr. Fulks' request to file an amended habeas petition. *See* Dkt. 54.

Mr. Fulks filed an amended habeas petition on March 8, 2019. Although it became fully briefed on July 12, 2019, the Court ordered supplemental briefing on Mr. Fulks' second claim, since the parties did not agree on the legal basis for the claim. That supplemental briefing was recently completed, and Mr. Fulks' habeas petition is now ripe for decision.

## II.
## Legal Standards

The primary legal issue the Court must resolve is whether Mr. Fulks meets the requirements of the "Savings Clause" found in 28 U.S.C. § 2255(e).[3] Prior to the enactment of 28 U.S.C. § 2255 in 1948, federal prisoners wishing to file a collateral attack on their convictions or sentences were required to petition for a writ of habeas corpus—codified in 28 U.S.C. § 2241—in the federal

---

[2] On June 17, 2016, Mr. Fulks received authorization from the United States Court of Appeals for the Fourth Circuit to file a successive motion for relief under 28 U.S.C. § 2255. *See United States v. Fulks*, 4:02-cr-00992-JFA-1 (D.S.C.), dkt. 1617. Mr. Fulks' § 2255 action remains pending in the United States District Court for the District of South Carolina. In that action, Mr. Fulks is pursuing a different claim than those he pursues here. Specifically, he argues that he is entitled to a new penalty phase because his conviction under 18 U.S.C. § 924(c)(3) is unconstitutional following the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), and its progeny. *See United States v. Fulks*, 4:02-cr-00992-JFA-1 (D.S.C.), dkt. 1618.

[3] The Court will refer to § 2255(e) as the "Savings Clause," as is the practice among federal courts. *See Webster*, 784 F.3d at 1135.

district court in which they were incarcerated. *In re Davenport*, 147 F.3d 605, 608 (7th Cir. 1998). Congress passed § 2255 "to change the venue of postconviction proceedings brought by federal prisoners from the district of incarceration to the district in which the prisoner had been sentenced." *Id.* (citing *United States v. Hayman*, 342 U.S. 205, 212-19 (1952)). Unlike a § 2241 petition, § 2255 motions "must be filed in the district of conviction." *Webster v. Daniels*, 784 F.3d 1123, 1124 (7th Cir. 2015) (en banc). "As a rule, the remedy afforded by section 2255 functions as an effective substitute for the writ of habeas corpus[, 28 U.S.C. § 2241,] that it largely replaced." *Id.*; *see Chazen v. Marske*, --- F.3d ----, 2019 WL 4254295, *3 (7th Cir. Sept. 9, 2019) ("As a general rule, a federal prisoner wishing to collaterally attack his conviction or sentence must do so under § 2255 in the district of conviction.").

However, Congress created the Savings Clause to serve as a "safety hatch." *Davenport*, 147 F.3d at 609. It permits use of § 2241 if it "appears that that the remedy by motion [under § 2255] is inadequate or ineffective to test the legality of [] detention." 28 U.S.C. § 2255(e).

The Savings Clause was mostly inconsequential until Congress passed the Antiterrorism and Effective Death Penalty Act ("AEDPA") in 1996. Among other things, AEDPA limits federal prisoners to one § 2255 motion attacking their conviction or sentence. *See* 28 U.S.C. § 2244(b); *Tyler v. Cain*, 533 U.S. 656, 661-662 (2001). The appropriate court of appeals must authorize second or successive § 2255 motions before the district court has jurisdiction to entertain them. *See* 28 U.S.C. § 2244(b)(3)(A); 28 U.S.C. § 2255(h). In order to obtain authorization from the court of appeals, the petitioner must have

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). Many prisoners seek to raise claims that do not meet one of the two avenues for authorization. Thus, they file habeas petitions under § 2241 in the district of their incarceration. To proceed under § 2241, however, they must pass through the Savings Clause, which is the critical legal issue in this case—whether Mr. Fulks can pass through the Savings Clause and thus use § 2241 to raise his claims.

Federal courts across the country disagree regarding the circumstances under which the Savings Clause is met. *See, e.g.*, *Shepherd v. Krueger*, 911 F.3d 861, 862-63 (7th Cir. 2018) ("[T]he scope of [§ 2255(e)] is controversial both within this circuit and beyond."); *Camacho v. English*, 872 F.3d 811, 815 (7th Cir. 2017) (Easterbrook, J., concurring) (noting that Seventh Circuit decisions regarding the scope of § 2255(e) "have not persuaded other circuits" and urging the Supreme Court "to decide whether § 2255(e) permits litigation of th[e] kind" authorized by the Seventh Circuit). Although Mr. Fulks was convicted and sentenced to death in the Fourth Circuit, this Court applies Seventh Circuit law to determine whether Mr. Fulks can proceed under § 2241. *See Webster*, 784 F.3d at 1135-39 (applying Seventh Circuit law to determine whether the Savings Clause is met).

The Seventh Circuit has found § 2255 inadequate or ineffective only in limited circumstances. The most significant cases in which this occurred, at least for Mr. Fulks' purposes, are set forth below.

The Seventh Circuit first found § 2255 inadequate or ineffective in *Davenport*. There, the Seventh Circuit addressed collateral attacks by two federal inmates—Davenport and Nichols. The Seventh Circuit framed the inquiry as follows: "To decide what 'adequacy' means . . . [in § 2255(e)] requires determining what the essential function of habeas corpus is and whether it is impaired in the circumstances before us by the limitations on the use of the remedy provided in

section 2255." *Davenport*, 147 F.3d at 609. It then explained that "[t]he essential function is to give a prisoner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *Id.*

Davenport—who sought to challenge whether his 1981 burglary conviction qualified as a predicate crime under the Armed Career Criminal Act—could have raised that challenge during both his direct appeal and when he filed his first § 2255 motion but chose not to raise such a claim. Davenport thus could not meet the Savings Clause because "[n]othing in 2555 made the remedy provided by that section inadequate to enable Davenport to test the legality of his imprisonment. He had an unobstructed procedural shot at getting his sentence vacated." *Id.*

Nichols' case, the Seventh Circuit held, was different. Unlike Davenport, during Nichols direct appeal and § 2255 proceedings, the "law of the circuit was so firmly against him" for the claim he wished to raise that it would have been futile to raise it. *Id.* at 610. The Supreme Court, however, had since overruled the Seventh Circuit's interpretation of the relevant statute and made that ruling retroactive. Thus "Nichols could not [have] use[d] a first motion under [§ 2255] to obtain relief on a basis not yet established by law," nor could he have received authorization to file "a second or other successive motion . . . because the basis on which he [sought] relief [was] neither newly discovered evidence nor a new rule of *constitutional* law." *Id.* (emphasis added).

Given that the Supreme Court's decision of statutory interpretation applied retroactively, the Seventh Circuit explained: "A procedure for postconviction relief can fairly be termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *Id.* at 611; *see id.* ("A federal prisoner should be permitted to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correction of a

6

fundamental defect in his conviction or sentence because the law changed after his first 2255 motion.").

Ultimately, *Davenport* created a three-part test used to determine if a petitioner can invoke the Savings Clause and proceed under § 2241. To do so, a petitioner must establish:

> (1) that he relies on not a constitutional case, but a statutory-interpretation case, so [that he] could not have invoked it by means of a second or successive section 2255 motion, (2) that the new rule applies retroactively to cases on collateral review and could not have been invoked in his earlier proceeding, and (3) that the error is grave enough . . . to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding, such as one resulting in a conviction for a crime of which he was innocent.

*Montana v. Cross*, 829 F.3d 775, 783 (7th Cir. 2016) (citation and quotation marks omitted); *see Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019).

After *Davenport*, the Seventh Circuit has infrequently found the Savings Clause satisfied in circumstances beyond those articulated in *Davenport*. One such instance was in *Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001). In *Garza*, after Garza's direct appeal and § 2255 proceedings were complete, the Inter-American Commission on Human Rights (the "Commission") determined that Garza's rights were violated during the penalty phase of his proceedings. *Garza*, 253 F.3d at 919. Garza sought to use this favorable decision to argue that he was entitled to habeas relief. *Id.* Looking to *Davenport*, the Seventh Circuit reasoned that because Garza could not meet either avenue set forth in § 2255(h) to file a second or successive § 2255 motion, and because it was "literally impossible" for Garza to have raised the Commission's favorable decision in his first § 2255 proceeding because the Commission had not yet issued its decision, § 2255 did not then nor had it ever "provided an adequate avenue for testing Garza's present challenge to the legality of his sentence." *Id.* at 922-23.

Another instance was in the en banc Seventh Circuit's recent decision in *Webster*.[4] Webster was a federal prisoner who had been sentenced to death. He raised an *Atkins* claim in a § 2241 petition. Specifically, Webster wished to present "newly discovered evidence that would demonstrate that he [was] categorically and constitutionally ineligible for the death penalty under . . . *Atkins*." *Webster*, 784 F.3d at 1125. The question was whether the Savings Clause permitted him to proceed via § 2241, and the Seventh Circuit held that it did.

The Seventh Circuit began its analysis by reviewing *Davenport* and its progeny. Although noting some differences in its Savings Clause cases, the Seventh Circuit synthesized them as follows: "All of these decisions hold . . . that there must be some kind of structural problem with section 2255 before section 2241 becomes available. In other words, something more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied." *Webster*, 784 F.3d at 1136; *Poe v. LaRiva*, 834 F.3d 770, 773 (7th Cir. 2016) ("[Meeting the Savings Clause] generally requires a structural problem in § 2255 [that] forecloses even one round of effective collateral review, unrelated to the petitioner's own mistakes." (citation and quotation marks omitted)).

Ultimately, the Seventh Circuit held that "[s]everal considerations" showed that "in the circumstances presented . . . the savings clause permits Webster to resort to a petition under section 2241." *Id.* at 1138. First, the Seventh Circuit reasoned that the language of subsections (a) and (e) of § 2255 suggests that the Savings Clause is met when § 2255 prevents a prisoner from

---

[4] Between *Garza* and *Webster*, the Seventh Circuit held that § 2241 is available not only to challenge convictions but also to challenge a prisoner's sentence, as long as the prisoner otherwise shows a structural problem with § 2255. *Brown v. Caraway*, 719 F.3d 583, 586-89 (7th Cir. 2013) ("[P]rovided that the other *Davenport* conditions are present, we conclude that a petitioner may utilize the savings clause to challenge the misapplication of the career offender Guideline, at least where, as here, the defendant was sentenced in the pre-*Booker* era.").

8

challenging the "'legality of [the prisoner's] *detention.*'" *Id.* (quoting 28 U.S.C. § 2255(e)). Second, the Seventh Circuit noted that the fact that "the Supreme Court had not yet decided *Atkins* . . . at the time AEDPA was passed supports the conclusion that the narrow set of cases presenting issues of constitutional ineligibility for execution is another lacuna in the statute." *Id.* In other words, the problem with § 2255 for Webster was that, after his conviction and sentence, "the Supreme Court ha[d] now established that the Constitution itself forbids the execution of certain people." *Id.* at 1139.

Even if the language of the Savings Clause was not enough to show that it was met, the Seventh Circuit explained that "the next step would be to take into account the fact that a core purpose of habeas corpus is to prevent a custodian from inflicting an unconstitutional sentence." *Id.* "To hold otherwise," the Seventh Circuit continued, "would lead in some cases—perhaps Webster's—to the intolerable result of condoning an execution that violates the Eighth Amendment." *Id.* Thus, the Seventh Circuit held that "there is no categorical bar against resort to section 2241 in cases where new evidence would reveal that the Constitution categorically prohibits a certain penalty." *Id.*

After setting forth this broad holding, the Seventh Circuit applied the holding to the specific circumstances of Webster's *Atkins* claim. In doing so, it explicitly limited the availability of § 2241 in several important respects. These limitations, as discussed in detail below, ultimately prevent Mr. Fulks from relying on *Webster* to meet the Savings Clause.

**III.**
**Discussion**

Before resolving the primary issue presented by the parties—whether Mr. Fulks meets the Savings Clause—two preliminary issues must be resolved. First, the Court must resolve the parties' disagreement over the contours of Mr. Fulks' second claim. Second, the Court must

address Mr. Fulks' argument that he is not required to meet the Savings Clause to proceed under § 2241. After addressing these issues, the Court turns to whether Mr. Fulks can meet the Savings Clause.

**A.      The Contours of Mr. Fulks' Claims**

Mr. Fulks raises two claims in his habeas petition. The first is straightforward: he argues that he is intellectually disabled and thus ineligible for the death penalty pursuant to *Atkins* and its progeny. The contours of Mr. Fulks' second claim, however, are disputed. Mr. Fulks maintains that his claim is brought under *Atkins*, while Respondent contends it is necessarily brought under *Ford*. Resolving this dispute, and other issues discussed below, requires a basic understanding of Eighth Amendment claims under *Atkins* and *Ford v. Wainwright*, 477 U.S. 399 (1986).

Before Mr. Fulks pleaded guilty and was sentenced to death, the Supreme Court held in *Atkins* that the Eighth Amendment forbids execution of an individual who has an intellectual disability. *Atkins*, 536 U.S. at 321; *see Hall v. Florida*, 572 U.S. 701, 704 (2014). "*Atkins* largely left to the [sovereign] the job of developing criteria to determine" which prisoners have an intellectual disability and thus cannot receive the death penalty. *McManus v. Neal*, 779 F.3d 634, 650 (7th Cir. 2015).

Twelve years after its decision in *Atkins*, the Supreme Court addressed "how intellectual disability must be defined in order to implement . . . the holding of *Atkins*." *Hall*, 572 U.S. at 709. It ultimately deemed unconstitutional a Florida law that prohibited "all further exploration of intellectual disability" if a prisoner obtained a score of 70 or higher on an IQ test. *Id.* at 704. The Supreme Court noted that "[t]he legal determination of intellectual disability is distinct from a medical diagnosis, but it is informed by the medical community's diagnostic framework." *Id.* at 722. The medical community diagnoses intellectual disability by analyzing three criteria: (1)

"significantly subaverage intellectual functioning"; (2) "deficits in adaptive functioning"; and (3) "onset of these deficits during the developmental period." *Id.* at 710; *see Moore v. Texas*, 137 S. Ct. 1039, 1045 (2017) (setting forth the same three criteria). These criteria "will 'inform[]' but not 'dictate' whether a person has an intellectual disability." *McManus*, 779 F.3d at 634 (quoting *Hall*, 572 U.S. at 721). Given this "conjunctive and interrelated assessment," the Supreme Court held that it was unconstitutional for a state to prevent evidence supporting a diagnosis of intellectual ability, at least when "a defendant's IQ test score falls within the test's acknowledged and inherent margin of error." *Hall*, 572 U.S. at 723; *see McManus*, 779 F.3d at 634 ("*Hall* also mandated that the legal standard for determining subaverage intellectual functioning must account for the margin of error in IQ testing.").

Most recently, in 2017, the Supreme Court in *Moore* held that the Texas Court of Criminal Appeals misapplied *Hall*. *Moore*, 137 S. Ct. at 1049 ("The [Texas court's] conclusion that Moore's IQ scores established that he is not intellectually disabled is irreconcilable with *Hall*."). Because the margin of error for Moore's IQ test yielded a range of 69 to 79—meaning Moore's intellectual functioning as measured by the IQ test could be below 70 such that he met the first factor—the Texas court "had to move on to consider Moore's adaptive functioning." *Id.* The Supreme Court cast its ultimate decision as an application of *Hall*: "in line with *Hall*, we require that courts continue the inquiry and consider other evidence of intellectual disability where an individual's IQ score, adjusted for the test's standard error, falls within the clinically established range for intellectual-functioning deficits." *Id.* at 1050. Moreover, the Supreme Court made clear that, in making the intellectual-disability determination, courts had to use "[t]he medical community's current standards" rather than outdated standards, as the Texas court did. *Id.* at 1052-53. In both *Hall* and *Moore*, the Supreme Court looked to the most recent editions of the clinical

11

manual of the American Association on Intellectual and Developmental Disabilities ("AAIDD") and the Diagnostic and Statistical Manual of Mental Disorders ("DSM") published by the American Psychiatric Association. *Id.* at 1048-53; *Hall*, 572 U.S. at 710-23.

The claim first recognized in *Atkins* and at issue in *Hall* and *Moore* is distinct from the claim first recognized in *Ford*, even though both are rooted in the Eighth Amendment. In *Ford*, the Supreme Court held that "[t]he Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane," which was defined as a person whose mental condition "prevents him from comprehending the reasons for the penalty or its implications." 477 U.S. at 410, 417. Or, as further explained by the Supreme Court in *Panetti v. Quarterman*, 551 U.S. 930 (2007), the Eighth Amendment prohibits the execution of a person whose "mental state is so distorted by a mental illness" that he lacks a "rational understanding" of "the State's rationale for [his] execution." *Id.* at 958-59. The Supreme Court recently reiterated that the proper inquiry under *Ford* is "whether a mental disorder has had a particular *effect*"; the *Ford* standard "has no interest in establishing any precise *cause*." *Madison v. Alabama*, 139 S. Ct. 718 (2019).

In sum, although claims under *Atkins* and *Ford* are similar, they apply different standards and focus on different time periods. *Atkins* addresses the constitutionality of sentencing an individual to death, while *Ford* asks whether a prisoner subject to a death sentence can have that sentence carried out. Thus, for example, evidence of further intellectual tests conducted on a prisoner subject to a death sentence would have "no bearing on the *initial* conviction and sentence"—that is, the *Atkins* inquiry—"though they would be highly pertinent to the ultimate ability of the government to carry out the sentence" consistent with *Ford. Webster*, 784 F.3d at 1140. Because a *Ford* claim inquires into the prisoner's mental state near the time of execution, a

12

*Ford* claim is typically not ripe until an execution date has been set. *See Holmes v. Neal*, 816 F.3d 949, 954 (7th Cir. 2016).

Again, Mr. Fulks' first claim is a straightforward *Atkins* claim; he argues that he is intellectually disabled and thus the Eighth Amendment prohibits his execution. The factual predicate for Mr. Fulks' second claim is that his cognitive functioning and fetal alcohol spectrum disorder make him functionally equivalent to one who is intellectually disabled. He argues that regardless of whether he meets the diagnostic criteria to be categorized as intellectually disabled, the same justifications forbidding the execution of intellectually disabled individuals apply to individuals with functionally similar limitations. Mr. Fulks' claim, then, amounts to a request to extend *Atkins*, as *Atkins* held only that those who are *intellectually disabled* cannot be executed. *Atkins*, 536 U.S. at 321; *see Hall*, 572 U.S. at 704.

Although Mr. Fulks does not point to any federal court that has accepted this argument, Mr. Fulks argues that this extension of *Atkins* is appropriate based on the Supreme Court's decision in *Madison*, which, as noted above, involved a claim under *Ford*. Yet Mr. Fulks disavows any claim under *Ford*. He explains: "Mr. Fulks does not claim that he is ineligible for death because he is 'insane' under *Ford*, or because he lacks a rational understanding of his situation. He argues that this Court must use *Madison*'s functional approach to determining whether he is ineligible for death under *Atkins*." Dkt. 67 at 14; *see id.* at 15 ("Mr. Fulks asks this Court to follow *Madison* by taking a functional approach to its application of the *Atkins* criteria. Mr. Fulks does not ask this Court to apply the *Ford* criteria.").

Respondent presents several bases to reject Mr. Fulks' second claim on the merits. For example, Respondent argues that there is no legal basis to extend the protections of *Atkins* to those who are only functionally intellectually disabled, especially not *Madison*, which dealt exclusively

13

with a *Ford* claim.  Respondent also argues that, despite Mr. Fulks' disavowal of a *Ford* claim, his claim necessarily is brought under *Ford* and should be dismissed as unripe.

Ultimately, the Court construes Mr. Fulks' second claim as he describes it—namely, an *Atkins* claim rather than a *Ford* claim.  However, this means that Mr. Fulks' two claims are essentially the same, at least for purposes of whether they can proceed under § 2241.  The first is a traditional *Atkins* claim based on his contention that his is intellectually disabled, while the second is an *Atkins* claim based on the contention that he is functionally equivalent to one who is intellectually disabled and the corresponding argument that *Atkins* should be extended to cover such persons.

Because Mr. Fulks' two claims are both rooted in *Atkins*, the Court's analysis of whether his *Atkins* claims may be brought in a § 2241 petition is the same.  In the end, the Court does not reach the merits of either claim, concluding that they cannot be brought via § 2241.

**B.      Whether the Savings Clause Must be Met to Proceed under § 2241**

The second issue the Court must resolve is whether Mr. Fulks must meet the Savings Clause to proceed under § 2241.  Mr. Fulks argues that he need not meet the Savings Clause because he is challenging the execution of his sentence rather than its imposition.  *See* Dkt. 55 at 62-63.

Mr. Fulks is correct that "[a] motion seeking relief on grounds concerning the execution but not the validity of the conviction and sentence . . . may not be brought under § 2255 and therefore falls into the domain of § 2241."  *Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998).  This distinction is important because prisoners "attack[ing] the imposition, not the execution, of [their] sentence . . . must demonstrate that [they] fall within the 'savings clause' provided by § 2255."  *McCall v. United States*, 304 Fed. Appx. 449, 450 (7th Cir. 2008).

14

The reason for this is apparent from the scope of § 2255. Section 2255 states, in relevant part, that prisoners "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Simply put, § 2255 allows prisoners to challenge the legality of their convictions or sentences. Habeas corpus claims falling outside this scope—such as those challenging how a sentence is executed— must be brought via the only remaining option, § 2241. *Valona*, 138 F.3d at 694; *see Walker v. O'Brien*, 216 F.3d 626, 629 (7th Cir. 2000) ("28 U.S.C. § 2255, the habeas corpus substitute for federal prisoners, is properly used only for challenges to convictions and sentences, while § 2241 is used for other challenges to the fact or duration of confinement.").

Claims challenging the execution of one's sentence, for example, include "a motion contending that the prison unlawfully deprived a prisoner of good time credits[;] [a claim] that parole officials unconstitutionally denied an application for release," *Valona*, 138 F.3d at 694; challenges to spending a portion of one's sentence on home confinement, *see Storm v. United States Parole Comm'n*, 667 Fed. Appx. 156, 157 (7th Cir. 2016); challenges to the implementation of the Inmate Financial Responsibility Program, which sets up a monthly payment plan for inmates' restitution, *see Ihmoud v. Jett*, 272 Fed. Appx. 525, 526 (7th Cir. 2008); and challenges to whether one's supervised release runs consecutively or concurrently to one's sentence, *see Figueroa v. Tarquino*, 737 Fed. Appx. 789, 790 (7th Cir. 2018). Notably, none of these examples are challenges to whether the petitioner's conviction or sentence is unlawful—that is, a challenge falling within the scope of § 2255(a).

Unlike these examples of challenges to how a sentence is executed, Mr. Fulks' claims clearly fall within the ambit of § 2255(a). It is undisputed that *Atkins* claims generally are available

in § 2255 proceedings. Mr. Fulks himself points to the fact that his co-defendant pursued an *Atkins* claim in his § 2255, and he does not dispute that he could have brought one.

Most important, Mr. Fulks' request for relief makes clear that he is challenging the constitutionality of his sentence: he asks the Court to vacate his death sentence because it violates the Eighth Amendment. *See* dkt. 55 at 79 (requesting the Court to grant "habeas relief from Petitioner's death sentence"). Simply put, Mr. Fulks asks "the court to set aside his sentence" as violative of the Eighth Amendment, thus his claims fall within § 2255(a).[5] *Figueroa*, 737 Fed. Appx. at 790.

Accordingly, because Mr. Fulks' claim falls within § 2255(a), he must meet the requirements of the Savings Clause to proceed under § 2241. *See Walker*, 216 F.3d at 629.

## C. Whether Mr. Fulks Meets the Savings Clause

Mr. Fulks argues that he meets the Savings Clause and can thus proceed under § 2241 for three different reasons. His first two arguments are that his claims rely on both new legal and new factual bases that were unavailable during his trial or initial § 2255 proceedings. *See* Dkt. 55 at 55-62. Mr. Fulks' new factual bases consist of the updated editions of the AAIDD (from 2012, the "AAIDD-2012") and DSM (from 2013, the "DSM-5"), which have superseded earlier versions that governed the medical community's diagnosis of intellectual disability at the time of his trial and § 2255 proceedings. Mr. Fulks' new legal bases consist of the Supreme Court's decisions in *Hall*, *Moore*, and *Madison*. His third argument is that this Court should recognize the availability

---

[5] Mr. Fulks resists this conclusion by arguing that he "is not claiming that his sentence violated *Atkins* at the time it was imposed. Rather, . . . he claims that his sentence is now unconstitutional under newly evolved diagnostic standards." Dkt. 55 at 62. But by his argument's own terms, he is challenging the constitutionality of his sentence and asking the Court "to set [it] aside," which falls squarely within § 2255(a)'s language permitting claims that a prisoner's sentence should be vacated because it violates federal law. *Figueroa*, 737 Fed. Appx. at 790.

of § 2241 beyond the narrow set of circumstances already recognized by the Seventh Circuit.  The Court will address each argument in turn.

### 1. New Legal Developments

The Court turns next to Mr. Fulks' argument that he meets the Savings Clause because his claims rely on new legal developments that were previously unavailable.  Specifically, Mr. Fulks maintains that the Supreme Court's decisions in *Hall* and *Moore* dramatically changed the "legal landscape governing *Atkins* claims."  Dkt. 55 at 57.  For example, Mr. Fulks contends that "*Hall* was the first decision of the Supreme Court holding that States did not have 'unfettered discretion to define the full scope of the constitutional protection' identified in *Atkins*."  *Id.* (quoting *Hall*, 572 U.S. at 719).  Similarly, as to Mr. Fulks' second *Atkins* claim, he argues that the Supreme Court's recent decision in *Madison* is what allows him to argue that a functional approach should be taken to *Atkins* claims.

The Seventh Circuit concluded that the Savings Clause was met when a prisoner's claim (1) relied on a new case of statutory interpretation that is retroactive (*Davenport*); (2) and when there was a subsequent decision about the case by an international tribunal (*Garza*).  The new legal bases on which Mr. Fulks' claims rely—the Supreme Court's decisions in *Hall*, *Moore*, and *Madison*—are not analogous to those relied on in either *Davenport* or *Garza*; indeed, the reasoning of those cases suggests that Mr. Fulks cannot meet the Savings Clause based on new legal developments.

Looking first to *Davenport*, it created the three-part test set forth above. The first *Davenport* factor requires a prisoner to show "that he relies on not a constitutional case, but a statutory-interpretation case[.]"  *Montana*, 829 F.3d at 783.  Mr. Fulks cannot meet this factor, as

17

he relies on *Hall* and *Moore* (which apply *Atkins*) and *Madison* (which applies *Ford*). All of these cases involve Eighth Amendment claims, not statutory ones.[6]

Although *Davenport* was decided some time ago, the Seventh Circuit has recently reiterated that *Davenport* does not apply to constitutional claims. *See Poe*, 834 F.3d at 773 (deeming "meritless" the argument that "*Davenport* does not actually preclude use of § 2241 for a constitutional case"). Constitutional claims, unlike statutory claims, do not reveal "some kind of structural problem with section 2255" that forecloses a single round of judicial review. *Webster*, 784 F.3d at 1136. "Where *Davenport* recognized a structural problem in § 2255(h) is in the fact that it did not permit a successive petition for new rules of *statutory* law made retroactive by the Supreme Court." *Poe*, 834 F.3d at 773. Section 2255(h), however, allows prisoners to pursue a successive § 2255 motion when there is "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Thus, although there is no avenue but § 2241 for petitioners who rely on new statutory cases, the Seventh Circuit made clear in *Davenport*—and recently reiterated in *Poe*—that there is not a similar structural problem with § 2255 for prisoners such as Mr. Fulks who raise constitutional claims.

*Garza* is similarly unhelpful to Mr. Fulks. There, the Seventh Circuit found a structural problem with § 2255 similar to that in *Davenport*. As discussed above, Garza raised a claim

---

[6] Although the Court need not ultimately resolve whether *Atkins* claims should be governed by a functional approach, as Mr. Fulks suggests, it notes that *Madison* does not suggest that *Atkins* should be extended in the way Mr. Fulks urges. *Madison* applied the doctrine established in *Ford*; it did not involve an *Atkins* claim. *See Madison*, 139 S. Ct. at 722-23. And even in the *Ford* context, the Supreme Court did not suggest it was adopting a *new* functional approach; it held that *Ford* and *Panetti* dictated a functional approach. *See id.* at 728 ("*Panetti* has already answered the question [presented in this case]."); *id.* ("[T]he key justifications *Ford* and *Panetti* offered for the Eighth Amendment's bar confirm our conclusion about its reach."). This shows that Mr. Fulks' argument that *Atkins* should be extended was available long before the Supreme Court decided *Madison*.

18

predicated on a favorable decision by an international tribunal that was issued after his first § 2255 was complete. Like the petitioner in *Davenport* who wished to rely on a subsequent decision of statutory interpretation, § 2255(h) similarly did not provide Garza an avenue to file a successive § 2255 motion because his claim was not a constitutional claim. Because it was "literally impossible" for Garza to have raised the international tribunal's favorable decision in his first § 2255 proceeding, § 2255 did not then nor had it ever "provided an adequate avenue for testing Garza's present challenge to the legality of his sentence." [7] *Garza*, 253 F.3d at 922-23.

Again, this is not the case for Mr. Fulks' constitutional claim. Section 2255(h) explicitly permits certain constitutional claims to be brought in successive § 2255 motions, and thus there is no "structural problem" with § 2255 that forecloses judicial review. *Webster*, 784 F.3d at 1136; *see Poe*, 834 F.3d at 773. In short, Mr. Fulks cannot meet the Savings Clause via the avenue opened in *Davenport* or *Garza*. [8]

One final note: Mr. Fulks' primarily relies on the Supreme Court's decision in *Hall* as the new legal basis for his first claim. But *Hall* was decided before the Seventh Circuit's decision in *Webster*. The Seventh Circuit repeatedly references whether Webster could meet the standards of

---

[7] Following *Garza*, the Seventh Circuit has noted that the case involved "'very unusual facts' . . . [and thus] its applicability beyond those facts is limited." *Kramer v. Olson*, 347 F.3d 214, 218 n.1 (7th Cir. 2003) (quoting *Garza*, 253 F.3d at 921).

[8] Mr. Fulks briefly argues that § 2241 is available for claims of actual innocence, citing to *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). But *Kramer* essentially applied the three *Davenport* factors, focusing on the third, which requires "that the error is grave enough . . . to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding, such as one resulting in a conviction for a crime of which he was innocent." *Cross*, 829 F.3d at 783. The Court need not reach this factor, as Mr. Fulks cannot meet the first *Davenport* factor. While Fulks is not arguing innocence of the crime to which he pleaded guilty, § 2241 is not available simply because one asserts he is actually innocent of a death sentence, which appears to be his argument. If it were, as discussed further below, the Seventh Circuit's decision in *Webster* would have been much different.

*Atkins* and *Hall*. *See, e.g.*, *Webster*, 784 F.3d at 1125, 1143, 1146. If reliance on the Supreme Court's decision in *Hall* was all that was required to meet the Savings Clause and proceed under § 2241, the Seventh Circuit's decision is *Webster* would have been dramatically different. There would have been no need, for example, to even examine whether Webster's reliance on new evidence was sufficient, nor any need for the Seventh Circuit to limit its decision, and thus the availability of § 2241, to cases of newly discovered evidence that "existed *before* the time of trial" and that were "not available during the initial trial" through no fault of Webster's counsel. *Id.* at 1140. It cannot be, as Mr. Fulks contends, that one need only invoke *Hall* (or any other subsequent Supreme Court case, such as *Moore* or *Madison*) to proceed under § 2241.

### 2. New Factual Developments

Mr. Fulks' next argument is that his claims rest on new factual bases. Specifically, Mr. Fulks contends that he has an intellectual disability as defined by *Atkins* based on the most recent editions of the AAIDD and DSM, which the medical community uses to determine whether an individual has an intellectual disability. Mr. Fulks contends that these new editions "constitute new factual bases not available at the time of Mr. Fulks' 2004 trial or at the time he filed his § 2255 petition." Dkt. 55 at 56.

Mr. Fulks' argument that these new factual bases allow him to proceed under § 2241 relies primarily on *Webster*. This is understandable: as in *Webster*, Mr. Fulks is attempting to bring *Atkins* claims in a § 2241 proceeding. Moreover, certain language in *Webster*, read in isolation, supports Mr. Fulks' position. In the end, however, the Seventh Circuit's holding in *Webster* was explicitly narrow. It made clear that the availability of § 2241 for Webster was based on multiple case-specific factors that are not present here.

The question presented in *Webster* was whether newly discovered evidence can ever "satisfy the demanding standard of [the Savings Clause]." *Webster*, 784 F.3d at 1125. To answer this question, the Seventh Circuit reviewed its precedents governing the Savings Clause. The Seventh Circuit synthesized its precedents as follows: "All of these decisions [*i.e.*, *Davenport*, *Garza*, *Brown*] hold . . . that there must be some kind of structural problem with section 2255 before section 2241 becomes available." *Webster*, 784 F.3d at 1136. Unlike the structural problem in *Davenport* or *Garza*—namely, that section § 2255 prevented the petitioner from relying on new legal authority—the structural problem identified in *Webster* was that newly discovered evidence may show that Webster was subject to an unconstitutional punishment. Specifically, Webster found records from the Social Security Administration that supported his claim of intellectual disability that, through no fault of his own, were not previously disclosed during his trial.

The Seventh Circuit held that "there is no categorical bar against resort to section 2241 in cases where new evidence would reveal that the Constitution categorically prohibits a certain penalty." *Id.* at 1139. Mr. Fulks says his claims are no different; they are based on new evidence and preventing him from relying on this evidence in a § 2241 proceeding would lead to the "intolerable result of condoning an execution that violates the Eighth Amendment." *Id.* at 1139; *see id.* (noting that "a core purpose of habeas corpus is to prevent a custodian from inflicting an unconstitutional sentence").

However, after the Seventh Circuit concluded that there was no "categorical bar" to such claims, it went on to consider whether Webster had "presented a proper case for [§ 2241's] use." *Id.* at 1140. In concluding that Webster had presented such a case, the Seventh Circuit made clear that the circumstances under which use of § 2241 is appropriate are extremely limited:

> We have established thus far that a person who proposes to show that he is categorically ineligible for the death penalty, based on newly discovered evidence,

21

may not be barred from doing so by section 2255. But this rule cannot apply to all newly discovered evidence, or else there would never be any finality to capital cases involving either the intellectually disabled or minors.[FN8]

> [FN8.] In fact, given the rule in *Ford v. Wainwright*, 477 U.S. 399 (1986), which holds that "[t]he Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane," *id.* at 410, there will always be some lack of finality for a person whose mental condition "prevents him from comprehending the reasons for the penalty or its implications." *Id.* at 417. Both parties have assumed, however, that the *Ford* standard is higher than the one imposed in *Atkins* and *Hall*. We assume for present purposes that this is correct.

*Webster*, 784 F.3d at 1140 & n.8. The Seventh Circuit went on to explain why its holding did not permit any case involving newly discovered evidence to meet the Savings Clause:

> Looking particularly at the intellectually disabled, it would always be possible to conduct more I.Q. and adaptive functioning tests in the prison. Those new scores would have no bearing on the initial conviction and sentence, though they would be highly pertinent to the ultimate ability of the government to carry out the sentence. But our concern is with the former, not the latter.
>
> What distinguishes Webster's case from the one we just hypothesized are two facts: first, the newly discovered evidence that current counsel have proffered existed before the time of the trial, and is relevant for precisely that reason; second, although the facts are disputed, there is evidence indicating that they were not available during the initial trial as a result of missteps by the Social Security Administration, not Webster's counsel. . . . . It will be a rare case where records that predate the trial are found much later, despite diligence on the part of the defense, and where those records bear directly on the constitutionality of the death sentence.

*Id.* at 1140.

The Seventh Circuit reiterated these limitations in a footnote, making clear that its ruling "depends" on an "array of limitations, both legal and factual." *Id.* at 1140 n.9. "[A]t least three principal reasons," it explained, ensure that its holding "will have a limited effect on future habeas corpus proceedings." *Id.* These specific limitations are as follows:

> First, the evidence sought to be presented must have existed at the time of the original proceedings. (A free-standing claim that an execution would violate *Ford v. Wainwright* might involve later-acquired evidence, but such a claim is quite

different from the one now before us.) Second, the evidence must have been unavailable at the time of trial despite diligent efforts to obtain it. Third, and most importantly, the evidence must show that the petitioner is constitutionally ineligible for the penalty he received. . . . These three limitations are more than adequate to prevent the dissent's feared flood of section 2241 petitions[.]

*Id.*

In short, the Seventh Circuit made clear that simply arguing that new evidence shows one's sentence is unconstitutional is not enough to meet the Savings Clause. If it were, "there would never be any finality to capital cases involving . . . the intellectually disabled." *Id.* at 1140. What made Webster's case unique—and § 2241 available to him—was the fact that there was newly discovered evidence that was (1) available at the time of trial (which is what made the evidence "relevant" to the *Atkins* claim), and (2) at least arguably unavailable through no fault of trial counsel. *Id.*

Against this background, Mr. Fulks' argument that his purportedly newly discovered evidence makes his case similar to *Webster* must fail. As an initial matter, it is at best a stretch to construe updated versions of the AAIDD and DSM as "newly discovered evidence" as *Webster* used the term. Rather than newly discovered evidence bearing on whether Mr. Fulks specifically was intellectually disabled at the time of trial (such as the Social Security Administration records discovered in *Webster*), Mr. Fulks relies on updated standards the medical community uses to evaluate whether anyone is intellectually disabled. These standards are not newly *discovered* evidence that Mr. Fulks specifically is intellectually disabled. They are instead newly *created* standards used to assess whether anyone is intellectually disabled. The latter is not "newly discovered evidence" as the term was used in *Webster*.

Nevertheless, the Court need not rely on this distinction to conclude that Mr. Fulks cannot proceed under § 2241. Even assuming the AAIDD-2012 and DSM-5 constitute newly discovered

evidence, they do not meet the most critical requirements for newly discovered evidence set forth in *Webster*—namely, "newly discovered evidence that . . . existed before the time of the trial." *Id.* at 1140; *see id.* at 1140 n.9 ("[T]he evidence sought to be presented must have existed at the time of the original proceedings."). The AAIDD-2012 and DSM-5 did not exist before Mr. Fulks' trial; they are only new evidence precisely because they were not created until *after* Mr. Fulks' trial.

This limitation in *Webster* is important because *Atkins* focuses on the time of trial. *Webster* made clear that the evidence at issue must have existed at the time of trial to be "relevant" to an *Atkins* claim. *Id.* at 1140. Unlike a claim under *Ford*, which "might involve later-acquired evidence," such evidence is not relevant to an *Atkins* claim unless it existed at the time the *Atkins* determination was made. *Id.* at 1140 n.9.

Relatedly, the Seventh Circuit made clear that later developed evidence is insufficient because to hold otherwise would prevent there from being "any finality to capital cases involving . . . the intellectually disabled." *Id.* at 1140. Just as it "would always be possible to conduct more I.Q. and adaptive functioning tests" and file a new *Atkins* claim based on that new evidence, *id.*, if Mr. Fulks' theory is accepted, he could refile his claims with each revision of the medical standards governing the diagnosis of intellectual disability. This, like additional testing, would preclude any finality in capital cases involving the intellectually disabled. The Seventh Circuit rejected this notion in *Webster*, and this Court must therefore reject it here.

In sum, Mr. Fulks' alleged newly discovered evidence does not allow him to proceed on the course charted by *Webster*. *Webster* is the only occasion the Seventh Circuit has permitted a constitutional claim to proceed under § 2241 because a structural problem with § 2255 prevented the claim from having a reasonable opportunity for adjudication. And since *Webster*, the Seventh Circuit has reiterated that "the *Webster* court took great care to assure that its holding was narrow

in scope" by limiting it to the "*rare* case where records that *predate* the trial are found much later[.]" *Poe*, 834 F.3d at 774. This is not such a case. Accordingly, *Webster* does not permit Mr. Fulks' claims to proceed under § 2241.

> **3.        Availability of § 2241 Beyond *Davenport*, *Garza*, and *Webster***

Having determined that Mr. Fulks' claims do not fall within any of the Seventh Circuit's Savings Clause precedents, the Court turns to Mr. Fulks' final argument for why he meets the Savings Clause—namely, that "the Seventh Circuit has never held, or even suggested, that [*Davenport* and *Webster*] represent the only circumstances under which the savings clause is available." Dkt. 67 at 11. Instead, Mr. Fulks contends that "the only requirement for establishing § 2241 jurisdiction through the savings clause is that there be 'some kind of structural problem with section 2255.'" *Id.* (quoting *Webster*, 784 F.3d 1136).

As a general matter, the Court agrees. The Seventh Circuit has never held that the Savings Clause is only met in the specific circumstances in which it has so found. Indeed, *Webster* itself represents a recent example of a § 2241 claim being permitted to proceed in a new context. But Mr. Fulks must point to a new structural problem with § 2255 that prevented him from raising his claims during his § 2255 proceedings. He has failed to do so.

First, Mr. Fulks argues that the structural problem here is the same as the one identified in *Webster*—that "because § 2255(h) was enacted prior to *Atkins*, 'as a structural matter,' Mr. Fulks' challenge to his sentence 'cannot be entertained by use of the 2255 motion." *Id.* at 12 (quoting *Webster*, 784 F.3d at 1139). But for all the reasons discussed above, Mr. Fulks cannot rely on *Webster*. Contrary to Mr. Fulks' suggestion, *Webster* did not hold that any *Atkins* claim exposes a structural problem with § 2255 since *Atkins* was decided after § 2255(h) was enacted. Had *Webster* so held, the Seventh Circuit would not have gone to the lengths it did to limit *Webster*'s

25

applicability to cases of "newly discovered evidence that . . . existed before the time of the trial." *Webster*, 784 F.3d at 1140. It would have simply stated that *Atkins* claims can proceed under § 2241.

Second, Mr. Fulks argues more generally that a structural problem with § 2255 exists because he "could not have raised his *Atkins* claim at trial or in his initial § 2255 motion." Dkt. 67 at 8. Specifically, he contends he could not have raised his *Atkins* claims because, until the Supreme Court's decisions in *Hall*, *Moore*, and *Madison* and the new diagnostic standards were released, he did not have a "viable *Atkins* claim." *Id.* at 10. According to Mr. Fulks, the non-viability of his claims is demonstrated by the fact that his co-defendant's *Atkins* claim was rejected by the district court based on factors the Supreme Court subsequently deemed impermissible in *Moore*. *See id.*; *see also* dkt. 55 at 59-61.

But the Savings Clause focuses on whether a prisoner had a reasonable opportunity to raise a claim, not whether that claim would have been successful. This is suggested by the language of the Savings Clause itself: § 2241 is available only when § 2255 "is inadequate or ineffective to *test* the legality of [] detention." 28 U.S.C. § 2255(e) (emphasis added). This is why whenever a prisoner is determined to have met the Savings Clause, it is because he never had a fair *opportunity* to raise the claim he now wishes to raise. *See, e.g.*, *Poe*, 834 F.3d at 772 (explaining that meeting the Savings Clause requires a structural problem with § 2255 that "forecloses even one round of effective collateral review, unrelated to the petitioner's own mistakes" (quotation marks omitted)); *Webster*, 784 F.3d at 1136 (noting that in *Davenport* the Seventh Circuit held "that whether section 2255 is inadequate or ineffective depends on whether it allows the petitioner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence" (citation and quotation marks omitted)); *Garza*, 253 F.3d at 922 (recognizing that

26

§ 2255 is inadequate or ineffective when "the operation of the successive petition rules absolutely prevented the petitioner from *ever having an opportunity* to raise a challenge to the legality of his sentence" (emphasis added)).

There is no dispute that Mr. Fulks could have raised both of his *Atkins* claims in his § 2255 proceedings. His argument is that this was nevertheless not a reasonable opportunity to obtain a reliable judicial determination because, as demonstrated by the rejection of his co-defendant's *Atkins* claim, the district court would have relied on criteria the Supreme Court has since held are inappropriate. This argument is not without force, at least on its surface. The Seventh Circuit concluded in *Davenport* that the Savings Clause was met even though Nichols could have technically raised the claim. The claim Nichols sought to raise did not have a reasonable opportunity for a reliable judicial determination, the Seventh Circuit reasoned, because even if he had raised it the "law of the circuit was so firmly against him" that it would have been futile to do so. *Davenport*, 147 F.3d at 610.

Mr. Fulks' situation, however, is different than the structural problem faced by Nichols in *Davenport*. First and foremost, *Davenport*'s reasoning is limited to statutory claims. *See Poe*, 834 F.3d at 773 (deeming "meritless" the argument that "*Davenport* does not actually preclude use of § 2241 for a constitutional case"). "Where *Davenport* recognized a structural problem in § 2255(h) is in the fact that it did not permit a successive petition for new rules of *statutory* law made retroactive by the Supreme Court." *Poe*, 834 F.3d at 773. But § 2255(h) permits successive constitutional claims in certain circumstances. Thus, Mr. Fulks' argument that the applicable law foreclosed his constitutional claim during his § 2255 proceeding finds no support in *Davenport* or any other case. The Seventh Circuit has made clear that—except in the limited circumstances presented in *Webster*—there is no structural problem with § 2255 for constitutional claims.

Second, even if one applies *Davenport*'s reasoning to a constitutional claim, Nichols' argument in *Davenport* is meaningfully different than the one Mr. Fulks presents. Nichols' argument was obviously foreclosed as a legal matter based on the Seventh Circuit's interpretation of the statute at issue—an interpretation that the Supreme Court subsequently reversed. *See Davenport*, 147 F.3d at 610. Here, Mr. Fulks asks the Court to accept that an *Atkins* claim would have failed because the facts supporting it did not meet the then-current legal standard, as demonstrated by the reasoning used to reject his co-defendant's *Atkins* claim.

This asks too much of the Savings Clause, as Mr. Fulks seeks an expansion of access to § 2241 far beyond what any court has permitted. To accept Mr. Fulks' argument would require the Court to assess the evidence supporting Mr. Fulks' *Atkins* claim, then speculate how another federal court would have treated that evidence based on how it treated similar evidence in rejecting Mr. Fulks' co-defendant's *Atkins* claim.[9] Only then could the Court determine whether Mr. Fulks' first § 2255 presented "a reasonable opportunity to obtain a reliable judicial determination" of an *Atkins* claim. *Webster*, 784 F.3d at 1136 (citation and quotation marks omitted). But no two cases are the same, and thus there is no certainty that—even assuming the court relied on improper factors in rejecting Mr. Fulks' co-defendant's *Atkins* claim—that the court would have similarly done so for Mr. Fulks. Such a speculative analysis stands in stark contrast to the *Davenport* analysis, which only requires the Court to answer three relatively straightforward legal questions (one of which, again, limits *Davenport*'s reach to statutory claims).

---

[9] Notably, this speculative analysis would not be required had Mr. Fulks raised an *Atkins* claim in his § 2255 when he had the opportunity to do so. It would then be apparent whether the court applied factors that the Supreme Court subsequently deemed inappropriate in *Moore*, and this Court would not have to speculate how another court would have treated a wide-range of evidence regarding Mr. Fulks' alleged intellectual disability.

28

In sum, Mr. Fulks had an opportunity to raise an *Atkins* claim, but he chose not to do so until now, when the law and relevant medical standards are more favorable to him. This is insufficient to meet the Savings Clause, as the Seventh Circuit has made clear that "something more than a lack of success"—or here, an anticipated lack of success—"with a section 2255 motion must exist before the savings clause is satisfied." *Webster*, 784 F.3d at 1136. Moreover, the Court must reject Mr. Fulks' invitation to find a structural problem with § 2255 based on a speculative analysis of how Mr. Fulks' claims would have been decided by another court had he raised them. Mr. Fulks does not point to any federal court that found the Savings Clause met in a remotely analogous case. And analysis of the most analogous case—*Webster*—suggests that it is unlikely the Seventh Circuit would support extending the availability of § 2241 in the manner Mr. Fulks urges.

Accordingly, Mr. Fulks' claims are barred by the Savings Clause, and the Court cannot reach the merits of them in this § 2241 proceeding.

**IV.**
**Conclusion**

For the reasons explained above, Mr. Fulks' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is **denied**. Mr. Fulks' claims are barred by § 2255(e) and therefore are dismissed with prejudice.[10] *See Prevatte v. Merlak*, 865 F.3d 894, 901 (7th Cir. 2017) (holding that failure to satisfy the Savings Clause is not a jurisdictional decision thus such claims should be dismissed with prejudice). Final judgment consistent with this Order shall issue.

---

[10] Mr. Fulks requests that if the Court rejects his claims, it make clear that any dismissal of a *Ford* claim is without prejudice. The Court accepted Mr. Fulks' construction of his second claim, which disavowed reliance on *Ford*; thus the Court did not adjudicate a *Ford* claim in this action. To the extent his second claim should have been construed as a *Ford* claim, it is dismissed without prejudice.

**IT IS SO ORDERED.**

Date: 9/20/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Bob Daley
OFFICE OF THE UNITED STATES ATTORNEY
bob.daley@usdoj.gov

Kathleen Michelle Stoughton
OFFICE OF THE UNITED STATES ATTORNEY
kathleen.stoughton@usdoj.gov

Claudia Van Wyk
FEDERAL COMMUNITY DEFENDER OFFICE
claudia_vanwyk@fd.org

Joe Howard Vaughn
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
joe.vaughn@usdoj.gov

Peter Konrad Williams
Federal Community Defender Office
pete_williams@fd.org

| | | |
|---|---|---|
| CHADRICK FULKS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:15-cv-00033-JRS-MJD |
| | ) | |
| J. E. KRUEGER, | ) | |
| | ) | |
| Respondent. | ) | |

## FINAL JUDGMENT

The Court now enters final judgment. Petitioner Chadrick Fulks' petition for a writ of

habeas corpus is denied and the action is dismissed with prejudice.

Date: 9/20/2019

Laura A. Briggs, Clerk

BY: _____
Deputy Clerk, U.S. District Court

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Bob Daley
OFFICE OF THE UNITED STATES ATTORNEY
bob.daley@usdoj.gov

Kathleen Michelle Stoughton
OFFICE OF THE UNITED STATES ATTORNEY
kathleen.stoughton@usdoj.gov

Claudia Van Wyk
FEDERAL COMMUNITY DEFENDER OFFICE
claudia_vanwyk@fd.org

Joe Howard Vaughn
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
joe.vaughn@usdoj.gov

Peter Konrad Williams
Federal Community Defender Office
pete_williams@fd.org

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### TERRE HAUTE DIVISION

| | |
|---|---|
| CHADRICK FULKS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )      No. 2:15-cv-00033-JRS-MJD |
| | ) |
| J. E. KRUEGER, | ) |
| | ) |
| Respondent. | ) |

**Order Denying Motion to Amend or Alter Judgment**

Petitioner Chadrick Fulks, a federal prisoner who has been sentenced to death, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, arguing that he is categorically ineligible for the death penalty because he is intellectually disabled (or the functional equivalent). On September 20, 2019, the Court denied Mr. Fulks' petition because his claims are barred by 28 U.S.C. § 2255(e). Dkts. 73 and 74. On October 17, 2019, Mr. Fulks filed a motion to alter or amend judgment.

To receive relief under Rule 59(e), the moving party "must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 770 (7th Cir. 2013) (cleaned up). Mr. Fulks seeks relief based on alleged errors by the Court, but he has failed to identify a manifest error of law or fact that warrants relief.

Mr. Fulks correctly asserts that *Atkins v. Virginia* prohibits the execution of intellectually disabled persons. 536 U.S. 304, 321 (2002); *see* dkt. 75, ¶¶ 6−21 (Mr. Fulks' motion, discussing *Atkins*). The Court's opinion denying Mr. Fulks' habeas petition recognized this holding. *See*, *e.g.,* dkt. 73 at 10 ("[T]he Supreme Court held in *Atkins* that the Eighth Amendment forbids execution of an individual who has an intellectual disability."). But some statements in the opinion suggested that

1

post-trial evidence is irrelevant to an *Atkins* claim. *See id.* at 12 (contrasting *Atkins* with *Ford v. Wainwright*, 477 U.S. 399 (1986)). As Mr. Fulks points out, post-trial evidence *is* relevant to an *Atkins* claim. The Court's statements suggesting otherwise were meant to acknowledge what the Seventh Circuit recognized in *Webster*—that there are evidentiary differences for *Atkins* and *Ford* claims and whether they meet the Savings Clause. *See Webster v. Daniels*, 784 F.3d 1123, 1140 (7th Cir. 2015). In any event, the background principle that post-trial evidence is relevant to an *Atkins* claim does not impact the Court's conclusion that Mr. Fulks' claims are barred by § 2255(e) and do not meet the statute's Savings Clause.[1] *See* dkt. 73 at 9−29.

Mr. Fulks argues that the Court's conclusion was wrong for two reasons. *First*, he argues that § 2255(e) does not apply to his claims at all because he is challenging "the *execution* of his death sentence rather than its *imposition*." Dkt. 75 at 13. The Court addressed and rejected this argument in its order denying relief. Dkt. 73 at 14-16. Section 2255(e) applies to any claim for which a petitioner is "authorized to apply for relief pursuant to [§ 2255]." And § 2255 authorizes prisoners convicted in federal court to move to vacate or set aside their sentences "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or *is otherwise subject to collateral attack*." 28 U.S.C. § 2255(a) (emphasis added). Mr. Fulks' § 2241 petition seeks to vacate or set aside his death sentence, and he has failed to show that his challenge is something other than a collateral attack on that sentence. Even if he concedes that the

---

[1] An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e).

2

sentence was valid when it was imposed, he argues the sentence is unconstitutional now. He therefore has not shown that application of § 2255(e) is a manifest error of law.

*Second*, Mr. Fulks argues that if he is subject to § 2255(e), he has met the Savings Clause because § 2255 "is inadequate or ineffective to test the legality of his detention." Dkt. 75 at 15−25. This argument is merely a replay of Mr. Fulks' pre-judgment briefs. And for the reasons stated in the Court's order, Mr. Fulks has not met the Savings Clause. *Davenport* does not apply because Mr. Fulks raises constitutional claims, not statutory ones. *In re Davenport*, 147 F.3d 605, 608 (7th Cir. 1998); *see Poe v. LaRiva*, 834 F.3d 770, 773 (7th Cir. 2016) (emphasizing that *Davenport* does not apply to constitutional claims). And *Webster* does not apply because Mr. Fulks' is not "the rare case where records that predate trial are found much later, despite diligence on the part of the defense, and where those records bear directly on the constitutionality of the death sentence." 784 F.3d at 1140 (distinguishing Webster's claims from the far-more-common *Atkins* claim, like Mr. Fulks', based on new evidence created after trial). Mr. Fulks' arguments for extending *Davenport* and *Webster* do not demonstrate that the Court committed a manifest error of law in declining to do so.

Accordingly, Mr. Fulks' motion to alter or amend judgment, dkt. [75], is **denied**.

**IT IS SO ORDERED.**

Date:   4/1/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

3

Distribution:

Cindy Jane Cho
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
cindy.cho@usdoj.gov

Bob Daley
OFFICE OF THE UNITED STATES ATTORNEY
bob.daley@usdoj.gov

Brian L. Reitz
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
brian.reitz@usdoj.gov

Kathleen Michelle Stoughton
OFFICE OF THE UNITED STATES ATTORNEY
kathleen.stoughton@usdoj.gov

Claudia Van Wyk
FEDERAL COMMUNITY DEFENDER OFFICE
claudia_vanwyk@fd.org

Peter Konrad Williams
Federal Community Defender Office
pete_williams@fd.org

# *** PUBLIC DOCKET ***

APPEAL,HABEAS,CLOSED

## U.S. District Court
## Southern District of Indiana (Terre Haute)
## CIVIL DOCKET FOR CASE #: 2:15-cv-00033-JRS-MJD

| | |
|---|---|
| FULKS v. KRUEGER | Date Filed: 01/29/2015 |
| Assigned to: Judge James R. Sweeney II | Date Terminated: 09/20/2019 |
| Referred to: Magistrate Judge Mark J. Dinsmore | Jury Demand: None |
| Cause: 28:2241 Petition for Writ of Habeas Corpus (federal) | Nature of Suit: 535 Death Penalty - Habeas Corpus |
| | Jurisdiction: Federal Question |

**Petitioner**

**CHADRICK FULKS**                    represented by **Claudia Van Wyk**
FEDERAL COMMUNITY
DEFENDER OFFICE
Capital Habeas Unit
601 Walnut Street
Suite 545W
Philadelphia, PA 19106
215-928-0520
Fax: 215-928-0826
Email: claudia_vanwyk@fd.org
*ATTORNEY TO BE NOTICED*

**Peter Konrad Williams**
Federal Community Defender Office
601 Walnut St.
Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
Fax: (215) 928-0826
Email: pete_williams@fd.org
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**J. E. KRUEGER**                    represented by **Bob Daley**
*Warden*
OFFICE OF THE UNITED STATES
ATTORNEY
1441 Main Street

Suite 500
Columbia, SC 29201
803-929-3054
Fax: 803-929-3135
Email: bob.daley@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Brian L. Reitz**
UNITED STATES ATTORNEY'S
OFFICE (Indianapolis)
10 West Market Street
Suite 2100
Indianapolis, IN 46204
317-226-6333
Fax: 317-226-6125
Email: brian.reitz@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Cindy Jane Cho**
UNITED STATES ATTORNEY'S
OFFICE (Indianapolis)
10 West Market Street
Suite 2100
Indianapolis, IN 46204
317-229-2425
Fax: 317-226-6125
Email: cindy.cho@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Kathleen Michelle Stoughton**
OFFICE OF THE UNITED STATES
ATTORNEY
1441 Main St.
Suite 500
Columbia, SC 29201
803-929-3114
Fax: 803-929-3135
Email: kathleen.stoughton@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/29/2015 | 1 | PETITION for Writ of Habeas Corpus, filed by CHADRICK FULKS. (No fee paid with this filing) (Attachments: # 1 Envelope)(DJH) (Entered: 01/30/2015) |
| 01/30/2015 | 2 | MAGISTRATE JUDGE's NOTICE of Availability to Exercise Jurisdiction issued. (DJH) (Entered: 01/30/2015) |
| | | |

| 03/16/2015 | 3 | ENTRY Directing Further Proceedings - The petitioner shall have through April 16, 2015 in which to either pay the $5.00 filing fee or demonstrate that he lacks the financial ability to do so. The petitioner shall have through April 16, 2015 in which to show cause why this action can proceed under § 2241 or why, in the alternative, it should not be transferred to the United States District Court for the District of South Carolina. Copy to Petitioner via US Mail. Signed by Judge William T. Lawrence on 3/16/2015. (AH) (Entered: 03/16/2015) |
|---|---|---|
| 03/19/2015 | 4 | Letter regarding Filing Fee (NO Filing Fee enclosed). (Attachments: # 1 Envelope) (AH) (Entered: 03/20/2015) |
| 04/07/2015 | 5 | RECEIPT #IP045319 for filing fee in the amount of $5.00, paid by Petitioner. (DJH) (Entered: 04/07/2015) |
| 04/07/2015 | 6 | RESPONSE re 3 ENTRY, filed by Petitioner CHADRICK FULKS. (Attachments: # 1 Declaration, # 2 Envelope)(AH) (Entered: 04/08/2015) |
| 05/11/2015 | 7 | ORDER TO SHOW CAUSE - The respondent shall have through June 18, 2015 in which to answer the allegations of the habeas petition, and in doing so shall show cause why the relief sought by the petitioner should not be granted. The petitioner shall have thirty (30) days after service of the answer in which to reply. Copies sent pursuant to distribution list. Signed by Judge William T. Lawrence on 5/11/2015.(AH) (Entered: 05/11/2015) |
| 06/10/2015 | 8 | MOTION for Extension of Time to July 18, 2015 in which to 1 Petition for Writ of Habeas Corpus, 7 Order to Show Cause , filed by Respondent L. LARIVA. (Attachments: # 1 Text of Proposed Order)(Ong, Winfield) (Entered: 06/10/2015) |
| 06/12/2015 | 9 | ORDER granting 8 Motion for Extension of Time. The respondent shall have up to and including July 18, 2015, to respond to the petitioner's Petition for a Writ of Habeas Corpus. Copy to petitioner via US Mail. Signed by Judge William T. Lawrence on 6/12/2015. (AH) (Entered: 06/12/2015) |
| 07/15/2015 | 10 | MOTION for Extension of Time to August 18, 2015 , filed by Respondent L. LARIVA. (Attachments: # 1 Text of Proposed Order)(Ong, Winfield) (Entered: 07/15/2015) |
| 07/20/2015 | 11 | ORDER granting 10 Motion for Extension of Time. The respondent shall have through August 18, 2015 in which to show cause why the relief sought by the petitioner should not be granted. Copy to petitioner via US mail. Signed by Judge William T. Lawrence on 7/20/2015. (AH) (Entered: 07/20/2015) |
| 08/18/2015 | 12 | RETURN TO ORDER TO SHOW CAUSE, re 11 Order on Motion for Extension of Time to File, filed by L. LARIVA.. (Attachments: # 1 Exhibit Attachment A)(Ong, Winfield) (Entered: 08/18/2015) |
| 08/26/2015 | 13 | MOTION Requesting Copies, filed by Petitioner CHADRICK FULKS. (Attachments: # 1 Envelope)(AH) (Entered: 08/27/2015) |
| 09/04/2015 | 14 | Entry Directing Further Proceedings - The petitioner's motion requesting copies 13 is granted. The clerk shall include a copy of the return to order to show |

| | | |
|---|---|---|
| | | cause and a copy of the docket with the petitioner's copy of this Entry. The respondent is directed to supplement her return to order to show cause. This shall be done not later than September 18, 2015. The petitioner shall have through October 18, 2015 in which to reply to the return to order to show cause. (See Entry.) Copy to petitioner via US Mail. Signed by Judge William T. Lawrence on 9/4/2015. (RSF) (Entered: 09/04/2015) |
| 09/11/2015 | 15 | MOTION for Extension of Time to November 18, 2015 in which to 14 Order on Motion , filed by Respondent L. LARIVA. (Attachments: # 1 Text of Proposed Order)(Ong, Winfield) (Entered: 09/11/2015) |
| 09/11/2015 | 16 | MOTION for Extension of Time, filed by Petitioner CHADRICK FULKS. (Attachments: # 1 Envelope)(DW) (Entered: 09/14/2015) |
| 09/22/2015 | 17 | Entry Discussing Selected Matters - The respondent's motion for enlargement of time [dkt 15] is granted. The respondent shall have through November 18, 2015 in which to comply with directions issued in the Entry of September 4, 2015. The petitioner's motion for enlargement of time [dkt 16] is granted to the extent that he shall have through December 15, 2015 in which to reply to the respondent's return to show cause and should not do so until after the respondent's supplement is filed. Copy to petitioner via US Mail. Signed by Judge William T. Lawrence on 9/22/2015. (RSF) (Entered: 09/22/2015) |
| 11/18/2015 | 18 | RETURN TO ORDER TO SHOW CAUSE, re 17 Order on Motion for Extension of Time to File, filed by L. LARIVA.. (Ong, Winfield) (Entered: 11/18/2015) |
| 12/07/2015 | 19 | MOTION for Extension of Time, filed by Petitioner CHADRICK FULKS. (Attachments: # 1 Envelope) (GSO) (Entered: 12/08/2015) |
| 01/13/2016 | 20 | MOTION to Appoint Counsel, filed by Petitioner CHADRICK FULKS (submitted by Assistant Federal Defender Peter Williams. (Attachments: # 1 Exhibit 1 - Order from 9/3/2010, # 2 Exhibit 2 - Order from 3/7/2011, # 3 Exhibit 3 - Declaration of Chadrick Evan Fulks, # 4 Text of Proposed Order, # 5 Envelope) (GSO) (Entered: 01/13/2016) |
| 02/01/2016 | 21 | Reassignment of Case to Magistrate Judge Mark J. Dinsmore. Magistrate Judge William G. Hussmann, Jr., is no longer assigned to the case. Please include the new case number (2:15-cv-00033-WTL-MJD), which includes the initials of the newly assigned judge, on all future filings in this matter. (JD) (Entered: 02/01/2016) |
| 02/01/2016 | 22 | ENTRY Discussing Selected Matters - 19 Motion for Extension of Time is GRANTED. The petitioner shall have through 3/31/2016 in which to reply to the respondent's return to order to show cause. 20 Motion to Appoint Counsel is granted as follows: The Federal Community Defender's Office for the eastern District of Pennsylvania is appointed to represent the petitioner. This representation shall be furnished without additional compensation pursuant to 18 U.S.C. § 3006A or other applicable statute. Signed by Judge William T. Lawrence on 2/1/2016 (copy mailed to petitioner). (LBT) (Entered: 02/02/2016) |
| | | |

| 03/01/2016 | 23 | NOTICE of Appearance by Peter Konrad Williams on behalf of Petitioner CHADRICK FULKS. (Williams, Peter) (Entered: 03/01/2016) |
| 03/01/2016 | 24 | NOTICE of Appearance by Sara Cohbra on behalf of Petitioner CHADRICK FULKS. (Cohbra, Sara) (Entered: 03/01/2016) |
| 03/18/2016 | 26 | MOTION for Extension of Time to June 29, 2016 *to File a Reply*, filed by Petitioner CHADRICK FULKS. (Attachments: # 1 Text of Proposed Order) (Williams, Peter) (Entered: 03/18/2016) |
| 06/28/2016 | 28 | Unopposed MOTION for Extension of Time to 9/26/2016 *to File a Reply*, filed by Petitioner CHADRICK FULKS. (Attachments: # 1 Text of Proposed Order) (Williams, Peter) (Entered: 06/28/2016) |
| 07/25/2016 | 29 | Order Granting Petitioner's Motions for Enlargement of Time - The petitioner's motions for enlargement of time 26 and 28 are granted. The petitioner shall have through September 29, 2016 in which reply to the respondent's return to order to show cause. Signed by Judge William T. Lawrence on 7/25/2016. (BRR) (Entered: 07/26/2016) |
| 09/23/2016 | 32 | Third MOTION for Extension of Time to December 26, 2016 *to File Reply*, filed by Petitioner CHADRICK FULKS. (Attachments: # 1 Text of Proposed Order Proposed Order)(Cohbra, Sara) (Entered: 09/23/2016) |
| 10/06/2016 | 33 | ORDER granting 32 Motion for Extension of Time. Petitioner shall have until December 26, 2016 to file his Reply to Respondent's Return to Order to Show Cause and Supplemental Response to Order to Show Cause. Signed by Judge William T. Lawrence on 10/6/2016. (DW) (Entered: 10/06/2016) |
| 12/12/2016 | 34 | Fourth MOTION for Extension of Time to 03-26-2017 *to File Reply*, filed by Petitioner CHADRICK FULKS. (Attachments: # 1 Text of Proposed Order Proposed Order)(Cohbra, Sara) (Entered: 12/12/2016) |
| 12/13/2016 | 35 | ORDER - granting 34 Motion for Extension of Time. The petitioner shall have through March 17, 2017 in which to reply to the return to order to show cause. Signed by Judge William T. Lawrence on 12/13/2016. (RSF) (Entered: 12/13/2016) |
| 03/15/2017 | 36 | MOTION for Extension of Time to June 15, 2017 *to File a Reply*, filed by Petitioner CHADRICK FULKS. (Attachments: # 1 Text of Proposed Order) (Williams, Peter) (Entered: 03/15/2017) |
| 03/17/2017 | 37 | ORDER granting 36 Motion for Extension of Time to June 15, 2017 to file his Reply to Respondent's Return to Order to Show Cause and Supplemental Response to Order to Show Cause.. Signed by Judge William T. Lawrence on 3/17/2017. (DW) (Entered: 03/17/2017) |
| 06/09/2017 | 38 | MOTION for Extension of Time to 9/13/17 *to File a Reply*, filed by Petitioner CHADRICK FULKS. (Attachments: # 1 Text of Proposed Order)(Williams, Peter) (Entered: 06/09/2017) |
| 06/12/2017 | 39 | ORDER granting 38 Motion for Extension of Time. Petitioner shall have until September 13, 2017, to file his Reply to Respondent's Return to Order to Show |

| | | |
|---|---|---|
| | | Cause and Supplemental Response to Order to Show Cause. Copy to petitioner via US Mail. Signed by Judge William T. Lawrence on 6/12/2017. (RSF) (Entered: 06/12/2017) |
| 09/11/2017 | 40 | MOTION for Extension of Time to 12/12/17 *to File Reply*, filed by Petitioner CHADRICK FULKS. (Attachments: # 1 Text of Proposed Order)(Williams, Peter) (Entered: 09/11/2017) |
| 09/12/2017 | 41 | ORDER granting 40 Motion for Extension of Time. Petitioner shall have until December 12, 2017, to file his Reply to Respondent's Return to Order to Show Cause and Supplemental Response to Order to Show Cause. Signed by Judge William T. Lawrence on 9/12/2017. (DW) (Entered: 09/12/2017) |
| 12/08/2017 | 42 | NOTICE of Substitution of Appearance by Claudia Van Wyk replacing *Sara Cohbra, Esq.* on behalf of CHADRICK FULKS (Van Wyk, Claudia) (Entered: 12/08/2017) |
| 12/08/2017 | 43 | MOTION for Extension of Time to March 12, 2018 *to File a Reply*, filed by Petitioner CHADRICK FULKS. (Attachments: # 1 Text of Proposed Order) (Williams, Peter) (Entered: 12/08/2017) |
| 12/13/2017 | 44 | ORDER granting 43 Motion for Extension of Time. Petitioner shall have until March 12, 2018, to file his Reply to Respondent's Return to Order to Show Cause and Supplemental Response to Order to Show Cause. Signed by Judge William T. Lawrence on 12/13/2017. (DW) (Entered: 12/13/2017) |
| 03/09/2018 | 47 | MOTION for Extension of Time to June 10, 2018 *to File a Reply*, filed by Petitioner CHADRICK FULKS. (Attachments: # 1 Text of Proposed Order) (Williams, Peter) (Entered: 03/09/2018) |
| 03/13/2018 | 48 | ORDER granting 47 Motion for Extension of Time to File a Reply to Respondent's Return to Order to Show Cause to 6/10/18. Signed by Judge William T. Lawrence on 3/13/2018. (JRB) (Entered: 03/13/2018) |
| 06/08/2018 | 49 | MOTION for Extension of Time to 9/8/18 *to File a Reply*, filed by Petitioner CHADRICK FULKS. (Attachments: # 1 Text of Proposed Order)(Williams, Peter) (Entered: 06/08/2018) |
| 06/11/2018 | 50 | ORDER granting 49 Motion for Extension of Time. Petitioner shall have until September 8, 2018, to file his Reply to Respondent's Return to Order to Show Cause and Supplemental Response to Order to Show Cause. Signed by Judge William T. Lawrence on 6/11/2018. (DW) (Entered: 06/11/2018) |
| 09/05/2018 | 51 | MOTION for Extension of Time to to file Reply , filed by Petitioner CHADRICK FULKS. (Attachments: # 1 Text of Proposed Order)(Van Wyk, Claudia) (Entered: 09/05/2018) |
| 09/07/2018 | 52 | ORDER - Granting 51 Motion for Extension of Time to File a Reply. Petitioner shall have until December 7, 2018, to file his Reply to Respondent's Return to Order to Show Cause and Supplemental Response to Order to Show Cause. Signed by Judge William T. Lawrence on 9/7/2018. (DMW) (Entered: 09/07/2018) |
| | | |

| 12/04/2018 | 53 | MOTION for Extension of Time to File a Reply until March 8, 2019 to Respondent's Return to Order to Show Cause and Supplemental Response to Order to Show Cause , filed by Petitioner CHADRICK FULKS. (Attachments: # 1 Text of Proposed Order)(Van Wyk, Claudia) Modified on 12/6/2018 to edit docket text(DMW). (Entered: 12/04/2018) |
|---|---|---|
| 12/06/2018 | 54 | Entry Discussing Motion for Time, Granting Leave to File an Amended Habeas Petition, and Setting Briefing Deadlines - The petitioner's motion for an extension of time, dkt. 53 , is granted to the extent that this action shall proceed along the following schedule. The petitioner shall have through March 8, 2019, in which to file an amended habeas petition. The respondent shall have through April 19, 2019, in which to file a return to the amended habeas petition. The petitioner shall have through May 17, 2019, in which to file a reply. The Court does not anticipate extending these deadlines absent extraordinary circumstances explained with specificity to the Court, and any such request must be filed at least two weeks before the deadline to the extent feasible. (See Entry.) Signed by Judge William T. Lawrence on 12/6/2018. (DMW) (Entered: 12/06/2018) |
| 03/08/2019 | 55 | Brief *Amended Petition for Writ of Habeas Corpus* by CHADRICK FULKS. (Attachments: # 1 Appendix Volume I, # 2 Appendix Volume II, # 3 Appendix Volume III, # 4 Appendix Volume IV)(Williams, Peter) (Entered: 03/08/2019) |
| 04/18/2019 | 56 | ORDER REASSIGNING CASE. Clerk is directed to randomly reassign case and notify parties of newly assigned District Judge. Signed by Judge William T. Lawrence on 4/18/2019. (APD) (Entered: 04/18/2019) |
| 04/18/2019 | 57 | NOTICE of Reassignment of Case to Judge James R. Sweeney II. Judge William T. Lawrence is no longer assigned to this case. Please include the new case number, **2:15-cv-00033-JRS-MJD**, on all future filings in this matter. (RSF) (Entered: 04/18/2019) |
| 05/01/2019 | 58 | ORDER DISCUSSING RESPONDENT'S FAILURE TO FILE A RESPONSE - In this death penalty case, the Court ordered Respondent to file a response to Petitioner's amended habeas petition by April 19, 2019. That deadline has long passed, and Respondent has failed to respond. Respondent has through May 8, 2019, to file either a response as previously directed or a motion for an extension of time. (See Order.) Signed by Judge James R. Sweeney II on 5/1/2019. (DMW) (Entered: 05/02/2019) |
| 05/08/2019 | 59 | NOTICE of Appearance by Joe Howard Vaughn on behalf of Respondent J. E. KRUEGER. (Vaughn, Joe) (Entered: 05/08/2019) |
| 05/08/2019 | 60 | MOTION for Extension of Time to August 9, 2019 in which to 55 Brief (Habeas) , filed by Respondent J. E. KRUEGER. (Attachments: # 1 Text of Proposed Order)(Vaughn, Joe) (Entered: 05/08/2019) |
| 05/08/2019 | 61 | MOTION *TO WITHDRAW COUNSEL*, filed by Respondent J. E. KRUEGER. (Attachments: # 1 Text of Proposed Order)(Vaughn, Joe) (Entered: 05/08/2019) |
| 05/10/2019 | 62 | ORDER - granting 61 Motion to Withdraw as Counsel for the Respondent. The |

| | | |
|---|---|---|
| | | appearance of Winfield D. Ong as counsel for Respondent is WITHDRAWN and TERMINATED. Signed by Magistrate Judge Mark J. Dinsmore on 5/10/2019. (DMW) (Entered: 05/10/2019) |
| 05/14/2019 | 63 | ORDER GRANTING IN PART MOTION FOR EXTENSION OF TIME - Respondent's motion for an extension of time, dkt. 60 , is granted in part. Respondent shall have through June 12, 2019, in which to file a return to the amended habeas petition. Petitioner shall have through July 12, 2019, in which to reply. These deadlines will not be extended. Signed by Judge James R. Sweeney II on 5/14/2019. (DMW) (Entered: 05/15/2019) |
| 06/11/2019 | 64 | NOTICE of Appearance by Bob Daley on behalf of Respondent J. E. KRUEGER. (Daley, Bob) (Entered: 06/11/2019) |
| 06/12/2019 | 65 | NOTICE of Appearance by Kathleen Michelle Stoughton on behalf of Respondent J. E. KRUEGER. (Stoughton, Kathleen) (Entered: 06/12/2019) |
| 06/12/2019 | 66 | RETURN TO ORDER TO SHOW CAUSE, re 58 Order, 63 Order on Motion for Extension of Time to File, filed by J. E. KRUEGER.. (Daley, Bob) (Entered: 06/12/2019) |
| 07/12/2019 | 67 | Reply re 66 Return to Order to Show Cause, filed by CHADRICK FULKS.. (Williams, Peter) (Entered: 07/12/2019) |
| 07/22/2019 | 68 | Order Directing Supplemental Briefing - Because Respondent conceived Petitioner's second claim as one under Ford rather than Atkins, Respondent shall have through August 5, 2019, to file a supplemental brief limited to addressing Petitioner's second claim. Petitioner shall have through August 19, 2019, to file a supplemental reply limited to the arguments made in Respondent's supplemental brief. The Court does not anticipate extending these deadlines absent extraordinary circumstances. (See Order.) Signed by Judge James R. Sweeney II on 7/22/2019. (DMW) (Entered: 07/23/2019) |
| 07/24/2019 | 69 | MOTION for Copies, filed by Petitioner CHADRICK FULKS. (Attachments: # 1 Envelope)(DMW) (Entered: 07/25/2019) |
| 07/25/2019 | 70 | Order Denying Pro Se Motion for Copies - Because Petitioner is represented by counsel, all filings must be made through counsel. Therefore, Petitioner's motion for copies, dkt. 69 , is denied. (See Order.) Signed by Judge James R. Sweeney II on 7/25/2019. (DMW) (Entered: 07/26/2019) |
| 08/05/2019 | 71 | Response to Motion to Vacate/Set Aside/Correct Sentence (2255) *SUPPLEMENTAL*, filed by Respondent J. E. KRUEGER. (Attachments: # 1 Exhibit Pro Se Motion for Video Hearing by Chadrick Fulks in S.C. District Court Case 4:02-CR-00992-JFA)(Stoughton, Kathleen) (Entered: 08/05/2019) |
| 08/19/2019 | 72 | Supplemental Reply In Support of Amended Petition for Writ of Habeas Corpus re 71 Response to Motion to Vacate/Set Aside/Correct Sentence (2255) *Petitioner's Supplemental Reply In Support Of Amended Petition For Writ Of Habeas Corpus Pursuant to 28 U.S.C. section 2241*, filed by Petitioner CHADRICK FULKS. (Van Wyk, Claudia) Modified on 8/20/2019 to edit document title(DMW). (Entered: 08/19/2019) |
| | | |

| 09/20/2019 | 73 | Order Denying Petition for a Writ of Habeas Corpus - Petitioner Chadrick Fulks is a federal prisoner incarcerated at the United States Penitentiary in Terre Haute, Indiana. He was convicted and sentenced to death in the United States District Court for the District of South Carolina. His convictions and sentence were affirmed on direct appeal, and his post-conviction motion under 28 U.S.C. § 2255 was denied. Mr. Fulks now seeks a writ of habeas corpus from this Court pursuant to 28 U.S.C. § 2241. He presents two claims, both of which argue that he is categorically ineligible for the death penalty under the Eighth Amendment because he is intellectually disabled or functionally equivalent thereto. Mr. Fulks' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is denied. Mr. Fulks' claims are barred by § 2255(e) and therefore are dismissed with prejudice. Final judgment consistent with this Order shall issue. (See Order.) Signed by Judge James R. Sweeney II on 9/20/2019.(RSF) (Entered: 09/23/2019) |
|---|---|---|
| 09/20/2019 | 74 | FINAL JUDGMENT - The Court now enters final judgment. Petitioner Chadrick Fulks' petition for a writ of habeas corpus is denied and the action is dismissed with prejudice. Signed by Judge James R. Sweeney II on 9/20/2019. (RSF) (Entered: 09/23/2019) |
| 10/17/2019 | 75 | MOTION *to Alter or Amend Judgment and Memorandum in Support*, filed by Petitioner CHADRICK FULKS. (Attachments: # 1 Text of Proposed Order) (Williams, Peter) (Entered: 10/17/2019) |
| 10/24/2019 | 76 | First MOTION for Extension of Time to File Response to November 14, 2019 re 75 MOTION *to Alter or Amend Judgment and Memorandum in Support* , filed by Respondent J. E. KRUEGER. (Attachments: # 1 Text of Proposed Order)(Daley, Bob) (Entered: 10/24/2019) |
| 10/25/2019 | 77 | MOTION to Substitute Attorney , filed by Respondent J. E. KRUEGER. (Attachments: # 1 Text of Proposed Order)(Reitz, Brian) (Entered: 10/25/2019) |
| 10/29/2019 | 78 | ORDER granting 77 Motion to Substitute Attorney. Attorney Joe Howard Vaughn withdrawn. Signed by Magistrate Judge Mark J. Dinsmore on 10/29/2019. (RSF) (Entered: 10/29/2019) |
| 10/30/2019 | 79 | NOTICE of Appearance by Cindy Jane Cho on behalf of Respondent J. E. KRUEGER. (Cho, Cindy) (Entered: 10/30/2019) |
| 10/31/2019 | 80 | ORDER granting 76 Motion for Extension of Time. Respondent shall have up to and including Thursday, November 14, 2019, in which to file a response re 75 MOTION *to Alter or Amend Judgment and Memorandum in Support*. Signed by Judge James R. Sweeney II on 10/31/2019. (LBT) (Entered: 11/01/2019) |
| 11/14/2019 | 81 | RESPONSE in Opposition re 75 MOTION *to Alter or Amend Judgment and Memorandum in Support* , filed by Respondent J. E. KRUEGER. (Daley, Bob) (Entered: 11/14/2019) |
| 11/21/2019 | 82 | REPLY in Support of Motion re 75 MOTION *to Alter or Amend Judgment and Memorandum in Support* , filed by Petitioner CHADRICK FULKS. (Williams, |

| | | |
|---|---|---|
| | | Peter) (Entered: 11/21/2019) |
| 04/01/2020 | 83 | Order Denying Motion to Amend or Alter Judgment - Mr. Fulks' motion to alter or amend judgment, dkt. 75 , is denied. SEE ORDER. Signed by Judge James R. Sweeney II on 4/1/2020. (KAA) (Entered: 04/01/2020) |
| 05/28/2020 | 84 | NOTICE OF APPEAL as to 74 Closed Judgment, 73 Order, 83 Order on Motion, filed by Petitioner CHADRICK FULKS. (No fee paid with this filing) (Williams, Peter) (Entered: 05/28/2020) |
| 05/29/2020 | 85 | PARTIES' SHORT RECORD re 84 Notice of Appeal **- Instructions for Attorneys/Parties attached.** (LBT) (Entered: 05/29/2020) |

**Case #: 2:15-cv-00033-JRS-MJD**